PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DONALD H. BESKIND; KAREN
BLUESTEIN; MICHAEL D. CASPER, SR.;
MICHAEL Q. MURRAY; D. SCOTT
TURNER; MICHAEL J. WENIG; MARY
A. WENIG; OAKSTONE WINERY,
INCORPORATED,

*Plaintiffs-Appellees,*

and

I. ROGER SCARBOROUGH,

*Plaintiff,*

v.

MICHAEL F. EASLEY, in his official
capacity as Governor of North
Carolina; ROY COOPER, in his
official capacity as Attorney
General of North Carolina; BRYAN
E. BEATTY, in his official capacity
as Secretary of the North Carolina
Department of Crime Control and
Public Safety; ANN SCOTT FULTON,
in her official capacity as Interim
Chairman of the North Carolina
Alcoholic Beverage Control
Commission,

*Defendants-Appellants.*

NATIONAL ALCOHOL BEVERAGE
CONTROL ASSOCIATION,
INCORPORATED; STATE OF MICHIGAN;

No. 02-1432

NATIONAL CONFERENCE OF STATE
LIQUOR ADMINISTRATORS; WINE &
SPIRITS WHOLESALERS OF AMERICA,
INCORPORATED; NATIONAL
ASSOCIATION OF BEVERAGE
IMPORTERS; NATIONAL ASSOCIATION OF
BEVERAGE RETAILERS; NATIONAL
BEER WHOLESALERS ASSOCIATION;
NATIONAL LICENSED BEVERAGE
ASSOCIATION; PRESIDENTS'
FORUM OF THE BEVERAGE ALCOHOL
INDUSTRY,
         *Amici Supporting Appellants.*

JUANITA SWEDENBURG; SWEDENBURG
WINERY; DAVID LUCAS; THE LUCAS
WINERY; FAMILY WINEMAKERS OF
CALIFORNIA; COALITION FOR FREE
TRADE,
         *Amici Supporting Appellees.*

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CA-00-258-3-MU)

Argued: January 22, 2003

Decided: April 8, 2003

Before NIEMEYER, LUTTIG, and TRAXLER, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion.
Judge Niemeyer wrote the opinion, in which Judge Luttig and Judge
Traxler joined.

## COUNSEL

**ARGUED:** James Peeler Smith, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants. James Alexander Tanford, INDIANA UNIVERSITY SCHOOL OF LAW, Bloomington, Indiana, for Appellees. **ON BRIEF:** Roy Cooper, Attorney General of North Carolina, Isaac Avery, Special Deputy Attorney General, Amy Yonowitz, Assistant Attorney General, Brian Blankenship, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants. Robert D. Epstein, EPSTEIN & FRISCH, Indianapolis, Indiana, for Appellees. James M. Goldberg, GOLDBERG & ASSOCIATES, P.L.L.C., Washington, D.C., for Amici Curiae Beverage Control Association, et al. Jennifer M. Granholm, Attorney General, Thomas L. Casey, Solicitor General, Irene M. Mead, Assistant Attorney General, MICHIGAN DEPARTMENT OF ATTORNEY GENERAL, Lansing, Michigan, for Amicus Curiae Michigan. Louis R. Cohen, C. Boyden Gray, Scott A. Shepard, WILMER, CUTLER & PICKERING, Washington, D.C.; M. Craig Wolf, WINE & SPIRITS WHOLESALERS OF AMERICA, INC., Washington, D.C., for Amici Curiae Wholesalers, et al. Clint Bolick, William H. Mellor, Steven M. Simpson, INSTITUTE FOR JUSTICE, Washington, D.C., for Amici Curiae Swedenburg, et al. Tracy S. Carlin, FOLEY & LARDNER, Jacksonville, Florida; Kevin M. Fong, PILLSBURY WINTHROP, L.L.P., San Francisco, California, for Amici Curiae Winemakers, et al.

## OPINION

NIEMEYER, Circuit Judge:

The plaintiffs, a California winery and individual oenophiles, commenced this action challenging the constitutionality of North Carolina's Alcoholic Beverage Control ("ABC") laws as they apply to the direct shipment of wine to consumers, which prohibit the importation of wine into North Carolina except through a highly regulated three-tiered structure. The plaintiffs alleged that portions of these laws, even though adopted pursuant to the Twenty-first Amendment, are

unconstitutional by virtue of the dormant Commerce Clause because the laws favor local wine manufacturers, who are permitted to sell and ship their wine directly to consumers, and correspondingly discriminate against out-of-state wine manufacturers and sellers, who must sell and ship through the more costly three-tiered structure.

The district court held that North Carolina's ABC laws unconstitutionally discriminated against out-of-state wine manufacturers and sellers and were not saved by the Twenty-first Amendment. Accordingly, the court enjoined their enforcement with the effect that out-of-state wine manufacturers would be permitted to sell and ship directly to North Carolina residents.

On appeal, North Carolina maintains that the aspect of its ABC laws authorizing local wine manufacturers to sell and ship directly to North Carolina consumers falls within the authority conferred on it by the Twenty-first Amendment. It claims that, in any event, the district court abused its discretion in striking down the core of the laws' prohibition against the direct shipment of wine and other alcoholic beverages when the alleged discrimination could be eliminated simply by striking down the single provision that favors local wine manufacturers.

For the reasons that follow, we affirm the district court's conclusion that the ABC laws unconstitutionally discriminate against out-of-state wine manufacturers and sellers and vacate its remedy striking down the core provisions of North Carolina's direct-shipment prohibitions.

I

Following the repeal of Prohibition with the adoption of the Twenty-first Amendment, many states, including North Carolina, enacted laws to prohibit the importation of alcoholic beverages except through a highly regulated structure created by ABC laws. As in many states that implemented the Twenty-first Amendment, the structure in North Carolina is a familiar three-tiered one in which out-of-state sellers of alcoholic beverages may sell their alcoholic beverages only to licensed wholesalers, who in turn may sell only to other wholesalers and licensed retailers.

Specifically, North Carolina General Statutes § 18B-102.1 provides that it is unlawful "for any person who is an out-of-state retail or wholesale dealer in the business of selling alcoholic beverages to ship or cause to be shipped any alcoholic beverage directly to any North Carolina resident who does not hold a valid wholesaler's permit," N.C. Gen. Stat. § 18B-102.1(a), and a violation of this section is punished as a felony, *id.* § 18B-102.1(e). Addressing the importation of wine in particular, the North Carolina ABC laws provide that a nonresident wine vendor must have a permit and then may sell wine in North Carolina "only to wholesalers, importers, and bottlers licensed under this Chapter," *id.* § 18B-1114, and only these wholesalers and importers are subject to excise taxes on wine sold, *id.* § 105-113.83. In addition to prohibiting out-of-state wine manufacturers from selling directly to residents in North Carolina, the ABC laws also prohibit North Carolina residents from receiving out-of-state wine without a wholesale permit. *Id.* § 18B-109. The licensed wine wholesaler who purchases wine from an out-of-state supplier may then resell the wine only to another licensed wholesaler or a licensed retailer. *Id.* § 18B-1107. And only a licensed retailer may sell to consumers. *Id.* § 18B-1000 *et seq.* The ABC laws also require that wholesalers and retailers be distinct persons. Thus, a manufacturer, bottler, or licensed wholesaler is prohibited from having any direct or indirect financial interest in a licensed retailer. *Id.* § 18B-1116(a)(2).

In sum, under laws that North Carolina first enacted in 1937 pursuant to the Twenty-first Amendment, an out-of-state wine manufacturer or seller wishing to sell wine to North Carolina residents must sell through the three-tiered system with (1) the first sale to a licensed wholesaler, (2) the second sale by a licensed wholesaler to a licensed retailer, and (3) the third sale by the licensed retailer to the consumer. And it is "unlawful for any person to manufacture, sell, transport, import, deliver, furnish, purchase, consume, or possess any alcoholic beverages except as authorized by the ABC law." *Id.* § 18B-102.

As part of its revision of its ABC laws in 1981, the North Carolina legislature enacted a provision, in the context of an emerging local wine industry, that authorized in-state wine manufacturers to sell and ship their products directly to consumers. *Id.* § 18B-1101(3). It is the juxtaposition of this provision with the provisions regulating out-of-state wine manufacturers that gives rise to the issue in this case.

The plaintiffs, some of whom wish to purchase wine directly from out-of-state wineries and some of whom are out-of-state sellers or shippers who wish to sell or ship wine directly to consumers in North Carolina, commenced this action in June 2000, challenging North Carolina's ban on direct shipment of out-of-state wine, alleging that it unconstitutionally discriminates against interstate commerce. Donald H. Beskind, a North Carolina resident and a collector of fine wines, would like to purchase rare and unusual wines that are not available in North Carolina except by direct shipment. Karen Bluestein, a North Carolina resident, would like to be able to purchase wine while visiting small out-of-state wineries and have the wine shipped back to her home in North Carolina. Michael D. Casper, Sr., a resident of Calabash, North Carolina, which is a small town with only a very limited selection of wine available locally, would like to be able to receive direct shipments of wine from out-of-state suppliers. Michael Q. Murray, Mary A. Wenig, and Michael J. Wenig, also North Carolina residents, would like to purchase and receive wines by direct shipment that are not available through North Carolina retailers. D. Scott Turner, a Michigan resident, would like to be able to ship wine from Michigan to his parents in North Carolina as a gift. And Oakstone Winery, Inc., a small winery in Fair Play, California, asserts that it is economically infeasible for it to distribute its wine through a wholesaler and that it relies principally on Internet sales and direct shipments. It has received requests for wine from North Carolina customers, including Beskind, but cannot fill them without violating North Carolina's ABC laws. It has indicated it would be willing to obtain a license and remit taxes to North Carolina with respect to the direct shipments.

In their complaint, the plaintiffs alleged that the North Carolina ABC laws treat "interstate sales and delivery of wine to adults differently from intra-state sales and delivery of wine to adults, discriminate[ ] against interstate sales and delivery, reserve[ ] to in-state retailers and wineries the exclusive market in wine, and provide[ ] a direct economic advantage to in-state wine businesses, all in violation of the Commerce Clause of the United States Constitution." In an affidavit submitted in support of plaintiffs' motion for summary judgment, Russell Bridenbaugh, an expert on the wine business and wine industry in the United States, stated on behalf of the plaintiffs:

For a California winery to sell its wine in North Carolina
and in other states that prohibit direct shipment to consum-
ers, it would have to go through an in-state wholesaler and
retailer, each of whom would add their handling costs and
profit to the cost of the wine. However, North Carolina and
most other prohibition states exempt their in-state small
wineries from having to go through the three-tiered system
and allow them to sell and deliver wine directly to the pub-
lic. Thus, the consumer must pay the additional mark-up on
California wine, but not on North Carolina wine.

For relief, the plaintiffs sought a declaratory judgment that North Car-
olina General Statutes §§ 18B-102.1, 18B-109, 18B-1114, 18B-102,
and 105-113.83 are unconstitutional, in violation of the Commerce
Clause, and they sought an injunction against North Carolina state
officials responsible for enforcing the ABC laws, "prohibiting them
from enforcing the provisions of the North Carolina ABC laws which
prohibit or punish the delivery of alcoholic beverages from an out-of-
state supplier to an adult North Carolina resident." They also sought
a mandatory injunction requiring North Carolina officials to accept
excise tax payments from plaintiffs that are due on wine received
directly from out-of-state sources.

On the parties' cross-motions for summary judgment, the district
court held that North Carolina's ABC laws are facially discriminatory
in their differential treatment of in-state and out-of-state wine manu-
facturers. The court explained:

North Carolina has articulated numerous legitimate reasons
for ABC laws generally, but has not provided a reason for
applying the ABC laws unevenly. Efficient administration
of tax collection, safety, and the like would certainly bal-
ance in favor of retaining the existing general system, were
it not for the exception for in-state wineries. But the Defen-
dants do not provide the court with a reason for the *excep-
tion* to balance against the needs of the Commerce Clause.
In the absence of a reasonable explanation from Defendants
for the lack of uniformity, the only one that comes to mind
is protection of local economic interests, which the Com-
merce Clause will not tolerate. No equilibrium can be

achieved when economic protectionism is placed on one side of the scale, and the Commerce Clause's need to pre-serve the respect of the several states for each other is placed on the opposite side.

Accordingly, the district court declared that North Carolina General Statutes §§ 18B-102.1, 18B-109, and 18B-1114 violate the Commerce Clause; that § 18B-102 violates the Commerce Clause "to the extent that it prohibits out-of-state wine dealers from shipping their products directly to North Carolina residents, while not similarly lim-iting in-state wineries;" and that § 105-113.83 violates the Commerce Clause "by not permitting out-of-state dealers and in-state wine buy-ers to pay the excise tax due on wine sales." The court also enjoined North Carolina "from enforcing state laws . . . that prohibit or punish out-of-state wine dealers from directly shipping wines to adult North Carolina residents" and ordered it to "accept excise tax payments from adult residents of North Carolina that are due on wine directly received from out-of-state sources."

North Carolina filed this appeal, challenging both the district court's finding that the ABC laws are unconstitutional and its choice of remedy. North Carolina contends that if there is a constitutional violation, the appropriate remedy is to enjoin the in-state preference rather than strike down the laws prohibiting direct shipments from out-of-state suppliers.

II

We address first whether the district court erred in concluding that North Carolina's ABC laws violate the Commerce Clause by discrim-inating against out-of-state wine manufacturers and that the Twenty-first Amendment does not save the discriminatory scheme from inval-idation. Resolution of these issues requires us to explore the interac-tion of the Commerce Clause and the Twenty-first Amendment.

Although it was understood during the nineteenth century that the States retained broad authority "to regulate the trade of alcoholic bev-erages within their borders free from implied restrictions under the Commerce Clause," *Craig v. Boren*, 429 U.S. 190, 205 (1976), and that the States were free to prohibit the in-state production and con-

sumption of alcoholic beverages, *see Mugler v. Kansas*, 123 U.S. 623 (1887), the Commerce Clause nonetheless was construed to prohibit States from regulating the in-state sale of imported liquor that remained in its original package, *Leisy v. Hardin*, 135 U.S. 100 (1890). "The combination of *Leisy* and *Mugler* meant that states could forbid domestic production of alcoholic beverages but could not stop imports; the Constitution effectively favored out-of-state sellers." *Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848, 852 (7th Cir. 2000). Congress remedied this imbalance by passing the Wilson Act in 1890 which provided:

> All . . . intoxicating liquors or liquids . . . transported into any State . . . shall upon arrival in such State . . . be subject to the operation and effect of the laws of such State . . . to the same extent and in the same manner as though such liquids or liquors had been produced in such State . . . and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise.

27 U.S.C. § 121. And to plug the loophole that left direct interstate shipments to consumers unregulated, Congress passed the Webb-Kenyon Act in 1913, which provided that a State could regulate the in-state sale of liquor to "any person interested therein, to be received, possessed, sold, or in any manner used." 27 U.S.C. § 122. These two statutes authorized States to apply their State laws governing alcoholic beverages within the State to alcoholic beverages that originated outside the State.

The beginning of Prohibition with the adoption of the Eighteenth Amendment in 1919 rendered moot the existing tension between the Commerce Clause and the States' regulation of alcoholic beverages. But with the end of Prohibition and the repeal of the Eighteenth Amendment by the adoption of the Twenty-first Amendment in 1933, pre-Prohibition statutory law was inscribed into the Constitution as § 2 of the Twenty-first Amendment, which provides:

> The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

This language, which closely followed the language of the Wilson and Webb-Kenyon Acts, expressed a "clear intention of constitutionalizing the Commerce Clause framework established under those statutes." *Craig*, 429 U.S. at 205-06. In addition, the Twenty-first Amendment had the effect of transferring to the States the power to address the moral concerns that underlay Prohibition, freeing them to impose temperance in the consumption of alcoholic beverages. *Cf. Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 276 (1984) (citing the promotion of temperance as one purpose of the Twenty-first Amendment).

Thus, within the authority to regulate alcoholic beverages conferred on the States by the Twenty-first Amendment, some power to regulate interstate commerce was withdrawn from Congress so that the Commerce Clause could not be construed to prevent the enforcement of State laws regulating the importation of alcoholic beverages and the manufacture and consumption of alcoholic beverages within State borders. *See, e.g.*, *Ziffrin, Inc. v. Reeves*, 308 U.S. 132, 138 (1939) ("The Twenty-first Amendment sanctions the right of a State to legislate concerning intoxicating liquors brought from without, unfettered by the Commerce Clause"). The core interests protected by the Twenty-first Amendment are described as the States' interests in "promoting temperance, ensuring orderly market conditions, and raising revenue," all in connection with the manufacture, shipment, and use of alcoholic beverages. *North Dakota v. United States*, 495 U.S. 423, 432 (1990) (plurality opinion). But beyond the core interests protected by the Twenty-first Amendment, Congress remains empowered to regulate interstate commerce under the Commerce Clause. *See Bacchus Imports*, 468 U.S. at 275 ("It is by now clear that the Amendment did not entirely remove state regulation of alcoholic beverages from the ambit of the Commerce Clause"). The question in this case thus becomes "'whether the interests implicated by a state regulation are so closely related to the powers reserved by the Twenty-first Amendment that the regulation may prevail, notwithstanding that its requirements directly conflict with express federal policies.'" *Id.* at 275-76 (quoting *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 714 (1984)).

Under the analytical framework designed by the Supreme Court to answer this question, we determine first whether the purported State

regulation violates the Commerce Clause without consideration of the Twenty-first Amendment. If we conclude that it does, then we look at the State's Twenty-first Amendment interests and determine "whether the principles underlying the Twenty-first Amendment are sufficiently implicated by the [State regulation] . . . to outweigh the Commerce Clause principles that would otherwise be offended." *Bacchus Imports*, 468 U.S. at 275; *see also Healy v. Beer Inst.*, 491 U.S. 324 (1989); *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573 (1986); *TFWS, Inc. v. Schaefer*, 242 F.3d 198, 212 (4th Cir. 2001). The Eleventh Circuit, applying this analytical framework in *Bainbridge v. Turner*, 311 F.3d 1104, 1112 (11th Cir. 2002), a case challenging Florida's direct-shipment laws, summarized the approach:

> All components of the dormant Commerce Clause doctrine remain in force unless a "core concern" of the Twenty-first Amendment is implicated. When such a concern is implicated, the Amendment removes the constitutional cloud from the challenged law so long as the state demonstrates that it genuinely needs the law to effectuate its proffered core concern. In no event can the law directly regulate extraterritorially; nor can a law ever be motivated by "mere economic protectionism."

(Internal citations omitted). Thus, in *Bacchus Imports*, the Supreme Court determined *first* that Hawaii's exemption of Hawaiian okolehao and pineapple wine from its 20% excise tax on liquor at wholesale was facially discriminatory and that the exemption had both the purpose and effect of discriminating in favor of local products. 468 U.S. at 273. The court *then* proceeded to reject Hawaii's contention that "even if the tax exemption violates ordinary Commerce Clause principles, it [was] saved by the Twenty-first Amendment to the Constitution." *Id.* at 274. We follow the same analytical approach to resolve this case.

A

The Commerce Clause provides that Congress "shall have Power . . . To regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. This affirmative authority to regulate commerce car-

ries with it an implied "dormant" aspect that restricts the power of the States to burden interstate commerce:

> It is also clear, however, that the Commerce Clause does more than confer power on the Federal Government; it is also a substantive restriction on permissible state regulation of interstate commerce. The Commerce Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce.

*Dennis v. Higgins*, 498 U.S. 439, 447 (1991) (internal quotations and citations omitted); *see also Bainbridge*, 311 F.3d at 1108. And a law that discriminates against interstate commerce is the clearest example of the type of State law that imposes an unconstitutional burden on that commerce. *Brown-Forman*, 476 U.S. at 579 ("When a state statute . . . discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry"). As prohibited by the "dormant" Commerce Clause, discrimination means simply "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Systems, Inc. v. Dep't of Environmental Quality*, 511 U.S. 93, 99 (1994).

A facial examination of North Carolina's ABC laws leaves little doubt that those laws treat in-state manufacturers of wine differently from out-of-state manufacturers of wine, with the undoubted effect of benefiting the in-state manufacturers and burdening the out-of-state manufacturers. Out-of-state manufacturers shipping wine into North Carolina, while authorized to operate under a nonresident wine vendor permit, *see* N.C. Gen. Stat. § 18B-1114, nevertheless must sell their products to a licensed wholesaler in the State and have that wine distributed only through North Carolina's three-tiered structure. In addition, North Carolina's ABC laws expressly forbid the direct shipment of wine from out-of-state sources to North Carolina residents who are not licensed wholesalers. *Id.* § 18B-102.1. In contrast, licensed in-state wineries may sell directly to consumers without distributing their wine through the three-tiered structure. *Id.* § 18B-1101(3). As the affidavit presented by the plaintiffs' wine expert

explains, this differential treatment has the economic effect of favoring in-state wine manufacturers and burdening out-of-state wine manufacturers and shippers. This affidavit asserts, without contradiction by the State, that wine sold through the three-tiered system is more expensive than the same or comparable wine sold in-state because wine distributed through the three-tiered structure is subjected to two "mark-ups" in price that local wine does not face. This affidavit also reveals that in-state wineries make use of a valuable distribution channel denied to out-of-state wineries. In sum, the record supports the plaintiffs' assertion that in-state wineries benefit from the very sort of vertical integration that the three-tiered scheme was originally designed to prevent.

Because North Carolina's ABC laws discriminate against out-of-state wine manufacturers and shippers in favor of in-state wine manufacturers and shippers, the scheme violates "a central tenet of the Commerce Clause." *Bacchus Imports*, 468 U.S. at 276. "[T]he virtually *per se* rule of invalidity provides the proper legal standard here . . . . [And the discriminatory scheme] must be invalidated unless [the State] can 'sho[w] that it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.'" *Oregon Waste Systems*, 511 U.S. at 100-01 (quoting *New Energy Co. v. Limbach*, 486 U.S. 269, 278 (1988)); *see also Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 353 (1977) ("When discrimination against commerce . . . is demonstrated, the burden falls on the State to justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake"). At least one reasonable nondiscriminatory alternative is available to North Carolina and it would require North Carolina simply to return to the pre-1981 structure and require in-state wines to pass through the same three-tiered scheme that all other wines must pass through. Another alternative would be to permit out-of-state wineries to engage in direct shipping just like in-state wineries can. North Carolina argues that licensing out-of-state wineries to authorize direct shipments from outside North Carolina's boundaries is not a genuine alternative because the State lacks the ability effectively to enforce its laws outside its boundaries. According to North Carolina, physical inspections would be more difficult, as would tax collection, and the deterrent effect of revoking a license would be much greater for an

in-state winery (which would no longer be able to produce wine) than for an out-of-state winery (which would only be forbidden to ship into North Carolina). Even if we fully credit these assertions, North Carolina could satisfy its concerns by requiring out-of-state wineries to import their wine into North Carolina to an in-state location and by treating that location in the same manner as it treats in-state winery locations. But in any event, North Carolina remains unable to explain why imposing the same restrictions on in-state wineries that it imposes on out-of-state wineries would not be a reasonable nondiscriminatory alternative.

Thus, the question remains whether the otherwise unconstitutional discriminatory scheme serves "any clear concern of the Twenty-first Amendment" and thereby is saved by the Amendment. *Bacchus Imports*, 468 U.S. at 276. We now turn to that question.

B

The plaintiffs do not challenge North Carolina's three-tiered system standing alone, perhaps due to their recognition that it is a long-standing regulatory scheme authorized by the Twenty-first Amendment. *See North Dakota*, 495 U.S. at 432 (plurality opinion) ("In the interest of promoting temperance, ensuring orderly market conditions, and raising revenue, the State has established a comprehensive system for the distribution of liquor within its borders. That system is unquestionably legitimate"); *id.* at 447 (Scalia, J., concurring) ("The Twenty-first Amendment . . . empowers North Dakota to require that all liquor sold for use in the State be purchased from a licensed in-state wholesaler. Nothing in our Twenty-first Amendment case law forecloses that conclusion"); *see also Bridenbaugh*, 227 F.3d at 853-54. Through this scheme, North Carolina furthers its Twenty-first Amendment interests in regulating the consumption of alcoholic beverages, channeling the distribution of alcoholic beverages, enforcing a minimum age for the purchase and consumption of such beverages, limiting the location from where they are sold, controlling the contents of such beverages, and collecting taxes in connection with their sale and distribution. Although North Carolina devotes a substantial portion of its brief to defending the three-tiered system, it was only by the addition of the preference for local wineries in 1981 that North Carolina injected unconstitutional discrimination into its ABC

laws. Prior to this 1981 amendment, *all* wineries had to sell their wines through all three tiers. Apparently to spur the growth of a domestic wine industry, North Carolina enacted laws exempting North Carolina wine manufacturers from the three-tiered distribution system. This gave rise to discrimination that, we have concluded, violates the Commerce Clause.

When pressed for an explanation for this discriminatory treatment, other than the promotion of local industry and protectionism, the State asserted that because the in-state wineries were located in the State, the State could adequately control them without requiring them to sell through a three-tiered system: "Prohibiting local wineries from shipping wine directly to consumers would be an unnecessary measure since the State has complete regulatory control over these businesses." The State argued further that "[i]t is not necessary to impose additional burdens on its local wineries merely in the name of symmetry." When pressed at oral argument for some other justification for the discriminatory treatment, the State could provide no additional explanation.

The fact that North Carolina finds it unnecessary for its Twenty-first Amendment purposes to require in-state wine manufacturers to sell and distribute through a system as tightly regulating as the three-tiered system suggests that it should also find it unnecessary to require out-of-state sources to sell and distribute through the three-tiered system. In addition to undercutting its rationale for the three-tiered system more generally, North Carolina's argument in support of its one-tiered regulation of local wineries does not measure up to the constitutional standard at issue. The question is not whether North Carolina can advance its regulatory purpose by imposing fewer burdens on in-state wineries than out-of-state wineries. That is what it presently does. Rather, the question is whether *discriminating* in favor of in-state wineries by vertically integrating its three-tiered regulatory scheme to their economic benefit serves a Twenty-first Amendment interest.

When presented with this question directly, North Carolina failed to identify any Twenty-first Amendment interest that is served by authorizing in-state wineries to sell and ship directly to consumers while simultaneously prohibiting out-of-state direct shipment. More-

over, there is no evidence that North Carolina's movement in the direction of selective deregulation of alcoholic beverages is an exercise of the State's Twenty-first Amendment power to regulate alcoholic beverages in promotion of temperance or any other Twenty-first Amendment interest. Against the backdrop of its general prohibition of direct shipment of alcoholic beverages, North Carolina's authorization of in-state direct shipment of wine — which has the effect of increasing access to wine produced only in North Carolina — cannot credibly be portrayed as anything other than local economic boosterism in the guise of a law aimed at alcoholic beverage control. Moreover, the authorization for direct in-state sales of wine by in-state wineries reduces the number of licensed entities regulating the distribution of wine and therefore has the tendency of surrendering control otherwise authorized by the Twenty-first Amendment.

In short, when we focus on the preference given by North Carolina's ABC laws to local wineries, we can find no Twenty-first Amendment interest that is promoted by this lessening of the regulation of local wineries.

C

Thus, we conclude that North Carolina's regulatory preference of in-state wine manufacturers discriminates against out-of-state wine manufacturers and sellers, in violation of the dormant Commerce Clause, and that the preference is "not supported by any clear concern of the Twenty-first Amendment," *Bacchus Imports*, 468 U.S. at 276, and therefore is not saved by the Twenty-first Amendment. Accordingly, on this issue, we affirm the judgment of the district court.

III

To remedy the unconstitutional discrimination arising from the conjunctive effect of North Carolina's ABC laws governing the direct shipment of wine by out-of-state and in-state wineries, the plaintiffs requested the district court to enjoin enforcement of the provisions prohibiting direct sales of wine to North Carolina residents by out-of-state wine manufacturers and sellers. The district court granted their request, declaring unconstitutional the core statutes that prohibit such direct shipment and enjoining their enforcement. The district court

also mandated the State to collect taxes from the in-state purchasers of wine shipped from out-of-state.

The State asserts that the remedy selected by the district court needlessly undermines the State's legitimate Twenty-first Amendment interests by declaring five core statutes unconstitutional. It states:

> The district court's Order eviscerates the Twenty-first Amendment insofar as that amendment safeguards North Carolina's right to regulate the transportation and importation of wines by out-of-state dealers. If the Order stands, the State can no more regulate direct shipments of wine by gigantic wine warehouse dealers than it can by little wineries like Oakstone.

The State characterized the district court's remedy as "grossly disproportionate to the wrong it identified" and argued that the district court erred in "ordering a remedy that is unconstitutional in itself because it substantially eradicates the State's authority guaranteed by the Twenty-first Amendment." The State urges that, rather than destroy its legitimate regulatory scheme, the remedy be focused simply on finding unconstitutional the single provision that created the discrimination in the first place — North Carolina General Statutes § 18B-1101(3) (authorizing local wineries to sell directly to consumers).

As a preliminary matter, we reject the plaintiffs' suggestion that they have placed at issue only the selected portions of North Carolina's ABC laws that regulate direct importation and that they can themselves select the portions to be stricken and those to be preserved. The unconstitutional discrimination that they alleged was not created only by the laws prohibiting the direct shipment of wine but rather by the *combination* of the prohibition of direct shipment and the law permitting local wineries to circumvent this prohibition. And we have not determined that the ban on out-of-state direct shipping *alone* violates the Commerce Clause; nor have we determined that the authorization for in-state direct shipping *alone* violates the Commerce Clause. Rather, we have determined that the conjunctive effect of these two statutes in producing discrimination burdening out-of-state wineries and benefiting in-state wineries violates the Commerce

Clause. *Cf. West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 199-200 (1994) ("By conjoining a tax and a subsidy, Massachusetts has created a program more dangerous to interstate commerce than either part alone"). Accordingly, we conclude that the plaintiffs' lawsuit and arguments, as well as the district court's ruling, have put into play not only the five statutes that plaintiffs seek to declare unconstitutional but also § 18B-1101(3), which permits local wineries to sell directly to consumers.

Thus, in reviewing the remedy, we are given at least the choice to affirm the district court's conclusion that the out-of-state direct-shipment prohibition should be stricken and its enforcement enjoined or to agree with the State that only the provision affording the preference for local wineries should be stricken and enjoined. Although we recognize the plaintiffs' interest as oenophiles in promoting the direct shipment of out-of-state wine and therefore their interest in having the direct-shipment prohibition stricken, their arguments have not established the illegality of the prohibition itself. Rather, the plaintiffs have latched onto a violation of the Commerce Clause created by the 1981 addition to the ABC laws as leverage to eliminate the preexisting prohibition against direct shipment.*

If the record reveals that North Carolina continues to maintain its interest in enforcing its ABC laws to regulate the transportation and importation of alcoholic beverages as guaranteed by the Twenty-first Amendment, then the statutory preference for local wineries, which we have already concluded does not promote interests protected by the Twenty-first Amendment, would be the appropriate statute to strike down as unconstitutional. With the elimination of the local preference statute, no interest of the Twenty-first Amendment is implicated, yet the discrimination violating the Commerce Clause is eliminated.

---

*The 1981 amendment "created" the violation of the dormant Commerce Clause because it brought into effect different rules for in-state and out-of-state wineries. The conclusion of our Commerce Clause analysis did not depend, however, on the chronological accident that the authorization given to in-state wineries post-dated the general prohibition against direct shipment but rather on the conjunctive effect of the old prohibition with the new authorization that came into being in 1981.

We conclude that the record does support that the State continues to maintain an interest in exercising its power under the Twenty-first Amendment. An examination of the ABC laws indicates that the North Carolina legislature continues to assert its power under the Twenty-first Amendment and that the ABC laws are, at bottom, intended to exercise that power in a broad-reaching manner. The very first provision of those laws, § 18B-100, explicitly states that the ABC laws "shall be liberally construed to the end that the sale, purchase, transportation, manufacture, consumption, and possession of alcoholic beverages shall be prohibited except as authorized in this Chapter." N.C. Gen. Stat. § 18B-100. This intent is manifested again by the general prohibition set out at the beginning of those laws: "It shall be unlawful for any person to manufacture, sell, transport, import, deliver, furnish, purchase, consume, or possess any alcoholic beverages except as authorized by the ABC law." *Id.* § 18B-102.

Additionally, North Carolina has maintained its ABC laws in implementation of the Twenty-first Amendment since 1937, shortly after the end of Prohibition, but only added the preference for local wineries over 40 years later, perhaps to promote its local wine industry but certainly not to relinquish its power under the Twenty-first Amendment. And even as it added that preference for local wineries, it did not exempt them from a substantial portion of the ABC laws. Moreover, it did not retreat from its general mandate that the ABC laws be "liberally construed" to prohibit the transportation and importation of alcoholic beverages except as permitted by those laws.

Finally, we can accept a presumption that North Carolina would want to uphold and preserve all of its ABC laws against constitutional challenges. Accordingly, when presented with the need to strike down one or more of those laws as unconstitutional, we can assume that North Carolina would wish us to take the course that least destroys the regulatory scheme that it has put into place pursuant to its powers under the Twenty-first Amendment. *See North Dakota*, 495 U.S. at 433 (plurality opinion) ("Given the special protection afforded to state liquor control policies by the Twenty-first Amendment, they are supported by a strong presumption of validity and should not be set aside lightly"). And as a matter of comity and harmony, we are duly bound to give effect to such a policy, disturbing only as much of the State regulatory scheme as is necessary to enforce the U.S. Constitution.

When applying this "minimum-damage" approach, we have little difficulty in concluding that it causes less disruption to North Carolina's ABC laws to strike the single provision — added in 1981 and creating the local preference — as unconstitutional and thereby leave in place the three-tiered regulatory scheme that North Carolina has employed since 1937 and has given every indication that it wants to continue to employ.

While our conclusion to focus on the single provision, which when added to the State's laws created their discriminatory effect, frustrates the plaintiffs' efforts to purchase wine directly from out-of-state wineries and to ship wine directly into North Carolina, their right is not to void a law protected by the Twenty-first Amendment but rather to eliminate discrimination in interstate commerce. The local preference provision gave them the opportunity to challenge the discrimination but not the right to dictate the course that cures the constitutional violation. North Carolina retains great flexibility to determine what sort of relief to provide to cure the discriminatory treatment, and thus we follow North Carolina's indication of its preference. *Cf. McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 39-40 (1990) (discussing a State's options in providing an adequate post-deprivation remedy for a liquor tax found to violate the dormant Commerce Clause). Any further objection to the State's proper exercise of its powers under the Twenty-first Amendment must now be taken up directly with the North Carolina legislature.

IV

For the foregoing reasons, we affirm the district court's conclusion that North Carolina's ABC laws unconstitutionally discriminate against interstate commerce, but we vacate its judgment insofar as it declares five statutes unconstitutional and enjoins their enforcement. We remand for issuance of an order consistent with this opinion.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED*