GOODWIN, District Judge,
concurring and dissenting:
I concur in Parts I, II, and V of the majority opinion. I respectfully dissent from Parts III and IV. I would affirm the district court’s conclusion that the Personal Import Exception[1] and ABC Stores Restriction [2] are unconstitutional.
I.
In Granholm v. Heald, 544 U.S. 460, 125 S.Ct. 1885, 161 L.Ed.2d 796 (2005), the Supreme Court adopted a framework for examining whether state liquor laws violate the dormant Commerce Clause. The Court responded to lower court decisions finding the Twenty-First Amendment could, in some situations, save state liquor laws that discriminated against interstate commerce. Our opinion in Beskind v. Easley, 325 F.3d 506 (4th Cir.2003), was such a decision. In Beskind, we held that when considering a state liquor law, we first examine whether the law violates the dormant Commerce Clause. Beskind, 325 F.3d at 513. If so, we explained we then look to the “principles underlying the Twenty-first Amendment” to determine if they are sufficiently implicated by the law “to outweigh the Commerce Clause principles that would otherwise be offended.” Beskind, 325 F.3d at 513-14 (quoting Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 275, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984)).
I believe the majority opinion misconstrues the effect that the Supreme Court’s decision in Granholm had on the analytical framework we constructed in Beskind. The majority reads Granholm, as only modifying that framework. The majority explains, “the Supreme Court has modified th[e] [Beskind] framework, preserving the first inquiry but narrowing the second.” Op. at 15 (emphasis added). In my view, Granholm does not narrow, but rather completely eliminates consideration of Bes-kind’s “second inquiry.”
Quite simply, I read Granholm as requiring us to apply the same dormant Commerce Clause analysis to discriminatory liquor laws that we apply to other discriminatory laws. Granholm, 544 U.S. at 476, 125 S.Ct. 1885. We do not consider the principles of the Twenty-first Amendment. See id. at 487-88, 125 S.Ct. 1885 (“[T]he Twenty-first Amendment does not supersede other provisions of the Constitution.”).
It is clear, however, that because the majority believes the Personal Import Exception does not discriminate against interstate commerce, the majority’s constitutional conclusion would be the same even under my conception of the proper articulation of the change effected by Granholm.
*362 II.
The majority concludes that to find the Personal Import Exception unconstitutional, we also would have to find Virginia’s three-tier distribution system unconstitutional. I disagree. The discriminatory effect of the Personal Import Exception occurs after the beverages have passed through Virginia’s three-tier system. It is at this stage, when the alcoholic beverages are on the shelves ready for market, that interstate commerce is impermissibly impeded. See H.P. Hood & Sons, Inc. v. Du Mond, 336 U.S. 525, 535, 69 S.Ct. 657, 93 L.Ed. 865 (1949) (“[T]he ‘negative’ or ‘dormant’ aspect of the Commerce Clause prohibits States from ‘advancing their own commercial interests by curtailing the movement of articles of commerce, either into or out of the State.’ ”). The law tilts the market in favor of in-state retailers by preventing Virginians from having meaningful access to the markets of other States. See Granholm, 544 U.S. at 473, 125 S.Ct. 1885 (finding state liquor laws unconstitutional because they “deprive citizens of their right to have access to the markets of other States on equal terms”) (emphasis added).
I concede that a restriction on imports does not necessarily target out-of-state purchases. Obviously, a Virginian may buy the same amount of beer or wine in an out-of-state store as may a purchaser from any other State. In theory then, Virginia consumers are not denied access to the markets of other States because they are free to purchase the same amounts as other consumers. In reality, however, because Virginians may not carry more than a gallon of what they buy into Virginia, they are denied access to other States’ markets on equal terms with other consumers. Having an opportunity to purchase is not the equivalent of having meaningful market access. Such access requires not only that a consumer be able to purchase a product, but also that the consumer be able to use it. By preventing importation into Virginia, the Personal Import Exception impedes interstate commerce.
Consider this example: Mr. Smith lives in Bristol, Virginia, a town on the Virginia/Tennessee border. He wants to purchase a 12-pack of beer. The closest place he can buy beer is just across West State Street in Tennessee. The closest store in Virginia is nearly twice as far from Mr. Smith’s house. The Personal Import Exception deprives Mr. Smith of meaningful access to the conveniently located Tennessee retailer merely because it is located across the state line. To buy more than one gallon of beer (128 ounces), Mr. Smith must go to a Virginia store. Mr. Smith presumably could go to Tennessee and buy a 12-pack (approximately 144 ounces), but would have to either discard or drink two of the beers before crossing the street back into Virginia. The import restriction prevents Virginians from meaningfully participating in the markets of other States. As a result, the restriction imper-missibly impedes interstate commerce.
The Commonwealth argued that because Granholm noted that a State could completely bar the importation of alcohol, it follows that a law limiting alcohol importation is clearly permissible. Granholm, however, plainly indicates that a complete bar could be enacted only in “[a] State which chooses to ban the sale and consumption of alcohol altogether.” Granholm, 544 U.S. at 488-89, 125 S.Ct. 1885 (emphasis added). Virginia has not prohibited either the sale or consumption of alcohol altogether.
Virginia’s limitation on the quantity of alcoholic beverages a person may bring into the Commonwealth favors in-state economic interests over out-of-state eco *363 nomic interests. As Grcmholm explains, “Time and again [the Supreme Court] has held that, in all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate ‘differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.’ ” Id. at 472, 125 S.Ct. 1885 (quoting Oregon Waste Sys., Inc. v. Dep’t of Envtl. Quality, 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994)). Statutes with this effect are “generally struck down ... without further inquiry.” Id. at 487, 125 S.Ct. 1885 (quoting Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S. 573, 579, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986)). “State laws that discriminate against interstate commerce face ‘a virtually per se rule of invalidity.’ ” Id. at 476, 125 S.Ct. 1885 (quoting Philadelphia, 437 U.S. at 624, 98 S.Ct. 2531)).
The Personal Import Exception can be saved only if the regulation “advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.” New Energy Co. of Ind. v. Limbach, 486 U.S. 269, 278, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988). Virginia argues the law advances two purposes: 1) it facilitates tax collection and 2) it controls the importation of bootleg liquor. Both of these interests may be adequately served by reasonable nondiscriminatory alternatives. J.A. at 551 (As the Magistrate Judge below found, “the prohibition cannot be viewed as serving any legitimate core concern of the Twenty-first Amendment unless, of course, one concludes that transportation of unlimited quantities of alcoholic beverages acquired within Virginia necessarily has less potential for intemperance or other abuse than that acquired ‘over the state line’ ”); see also Granholm, 544 U.S. at 489-92, 125 S.Ct. 1885 (rejecting collecting tax revenue and protecting minors as legitimate local purposes for Michigan and New York laws).
Accordingly, I believe the Personal Import Exception is unconstitutional because it violates the dormant Commerce Clause.
III.
The ABC Stores Restriction is also unconstitutional. Virginia concedes this law discriminates against out-of-state wines, but claims the “market participant” exception justifies the discrimination.
The majority finds the market participant exception applicable because Virginia is a competitor in the market for wine in Virginia. The majority, however, fails to accurately define the relevant market. Because ABC Stores are the only stores where consumers may purchase liquor in Virginia, these stores are the only places where consumers may purchase wine and liquor in the same place. A consumer’s demand for purchasing both a bottle of liquor and a bottle of wine at the same time may be satisfied mly in ABC Stores. The relevant market is not the market for wine, but the market for wine and liquor.
Virginia has granted itself a monopoly in the market for the joint sale of wine and liquor through its ABC Stores, and uses that monopoly to impermissibly discriminate against out-of-state wines. As a result, the market participant exception cannot justify the ABC Stores Restriction.
IV.
Accordingly, I respectfully dissent from Parts III and IV of the majority opinion, and would find the Personal Import Exception and the ABC Stores Restriction unconstitutional.

. The Personal Import Exception allows individual consumers to import one gallon (or four liters) of wine and beer into Virginia without having to pass through the three-tier distribution system. Va.Code § 4.1-310(E).

. The ABC Stores Restriction prevents ABC stores from marketing and selling any wine not produced by Virginia "farm” wineries. Id. § 4.1-119(A).