RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0308P (6th Cir.)
File Name: 03a0308p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ELEANOR HEALD; RAY
HEALD; JOHN ARUNDEL;
KAREN BROWN; RICHARD
BROWN; BONNIE MCMINN;
GREGORY STEIN; MICHELLE
MORLAN; WILLIAM
HORWATH; MARGARET
CHRISTINA; ROBERT
CHRISTINA; TRISHA HOPKINS;
JIM HOPKINS; DOMAINE
ALFRED, INC.,
      *Plaintiffs-Appellants,*

No. 01-2720

*v.*

JOHN ENGLER, Governor;
JENNIFER M. GRANHOLM,
Attorney-General;
JACQUELYN STEWART,
Chairperson, Michigan Liquor
Control Commission, in their
Official Capacities,
      *Defendants-Appellees,*

MICHIGAN WINE & BEER
WHOLESALERS ASSOCIATION,

*Intervening
Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-71438—Bernard A. Friedman, District Judge.

Argued: May 7, 2003

Decided and Filed: August 28, 2003

Before: GUY, BOGGS, and DAUGHTREY, Circuit
Judges.

_____

### COUNSEL

**ARGUED:** James A. Tanford, INDIANA UNIVERSITY
SCHOOL OF LAW, Bloomington, Indiana, for Appellants.
Donald S. McGehee, OFFICE OF THE ATTORNEY
GENERAL, MICHIGAN LIQUOR CONTROL
COMMISSION, Lansing, Michigan, Anthony S. Kogut,
WILLINGHAM & COTÉ, East Lansing, Michigan, for
Appellees. **ON BRIEF:** James A. Tanford, INDIANA
UNIVERSITY SCHOOL OF LAW, Bloomington, Indiana,
for Appellants. Irene M. Mead, OFFICE OF THE
ATTORNEY GENERAL, MICHIGAN LIQUOR CONTROL
COMMISSION, Lansing, Michigan, Anthony S. Kogut,
WILLINGHAM & COTÉ, East Lansing, Michigan, for
Appellees. Louis R. Cohen, WILMER, CUTLER &
PICKERING, Washington, D.C., William H. Mellor, Steven
M. Simpson, INSTITUTE FOR JUSTICE, Washington, D.C.,
Clint Bolick, INSTITUTE FOR JUSTICE, Phoenix, Arizona,
for Amici Curiae.

## OPINION

MARTHA CRAIG DAUGHTREY, Circuit Judge.   In this civil rights action brought pursuant to 42 U.S.C. § 1983, the plaintiffs raise a constitutional challenge to Michigan's alcohol distribution system, contending that state provisions differentiating between in-state and out-of-state wineries violate the Commerce Clause.[1]   Those regulations prohibit

[1]Similar actions have been brought challenging direct shipment bans in North Carolina, Virginia, Indiana, Texas, Florida and New York, among other states. *See*, *e.g.*, *Beskind v. Easley*, 325 F. 3d 306 (4th Cir. 2003) (affirming lower court finding that North Carolina's statutory scheme discriminates between in-state and out-of-state wineries, violates the Commerce Clause, and is not "saved" by the Twenty-first Amendment); *Bainbridge v. Turner*, 311 F.3d 1104, 1115 (11th Cir. 2002) (finding that Florida's alcohol distribution statutes' differentiation between in-state and out-of-state wineries facially discriminates against interstate commerce and remanding for further fact-finding on whether Florida's statutory scheme is "necessary to effectuate the . . . core concern [of revenue raising] in a way that justifies treating out-of-state firms differently from in-state firms"); *Brindenbaugh v. Freeman-Wilson*, 227 F.3d 848, 851 (7th Cir. 2000) (finding that Indiana's ban on direct shipment from out-of-state wineries is constitutional because "§ 2 of the twenty-first amendment empowers Indiana to control alcohol in ways that it cannot control cheese"); *Swedenburg v. Kelly*, 232 F.Supp. 2d 135 (S.D. N.Y. 2002) (finding that New York's ABC law's ban on direct shipment of out-of-state wine is unconstitutional); *Dickerson v. Bailey*, 212 F. Supp.2d 673, 695 (S.D. Tex. 2002) (finding that Texas's ban on direct shipment by out-of-state wineries violates the dormant Commerce Clause and noting that the state had "fail[ed] to demonstrate how a statutory exception for local wineries from Texas' three-tier regulatory system . . . is justified by any of the traditional core concerns of the twenty-first amendment" or to show "that the core interests of taxation and orderly market conditions . . . could not be effected by alternative, nondiscriminatory options for these out-of-state wineries"), *aff'd*, *Dickerson v. Bailey*, 336 F.3d 388 (5th Cir. 2003); *Bolick v. Roberts*, 199 F. Supp.2d 397, 409 (E.D.Va. 2002) (adopting, with amendments, magistrate judge's findings that Virginia's ABC laws violated the dormant Commerce Clause and that the state had failed to produce "any

the direct shipment of alcoholic beverages from out-of-state wineries, while allowing in-state wineries to ship directly to consumers, provided that the in-state wineries comply with certain minimal regulatory requirements.  The plaintiffs, who include wine connoisseurs, wine journalists, and one small California winery that ships its wines to customers in other states, claim that this system is unconstitutional under the dormant Commerce Clause because it interferes with the free flow of interstate commerce by discriminating against out-of-state wineries.   The defendants, who include Michigan officials (referred to collectively in this opinion as "the state") and the intervening trade association, argue in response that Michigan's regulatory scheme is constitutional under the Twenty-first Amendment to the federal constitution.

The parties filed cross-motions for summary judgment, and the district court granted the state's motion and denied the plaintiffs' motion.  The plaintiffs then filed a motion to reconsider, arguing that the district court should have addressed cross-motions to strike various evidence submitted by the two sides prior to the summary judgment decision.[2]

meaningful evidence" showing that the state cannot "accomplish its legitimate interests without discriminating against out-of-state direct shippers of wine"), *vacated by Bolick v. Danielson*, 330 F.3d 274 (4th Cir. 2003) (remanding for reconsideration in light of intervening change in applicable statutes); *see also Cooper v. McBeath*, 11 F.3d 547 (5th Cir. 1994) (striking down Texas's three-year durational residency and citizenship requirements for obtaining a liquor permit because these restrictions violated the dormant Commerce Clause and were not "saved" by the Twenty-first Amendment).

[2]Affidavits submitted by the plaintiffs included statements from various oenophiles; the Healds, who are wine critics and consultants; Domaine Alfred, a California winery; and several other wine and alcohol manufacturers and distributers.  Many of the affiants attested to their desire to have wine from out-of-state wineries shipped directly to their homes, their inability to do so, the general unavailability of certain wines in Michigan, and the willingness of the wineries and distributors to pay required taxes and obtain necessary permits, if allowed to ship directly to

The district court denied the motion to reconsider, noting that it had effectively denied the cross- motions to strike as moot, because it did not consider the challenged evidence in deciding the summary judgment motions.

The plaintiffs now appeal both the grant of summary judgment and the denial of their motion to reconsider. For the reasons set out below, we conclude that the regulations in question are discriminatory in their application to out-of-state wineries, in violation of the dormant Commerce Clause, and cannot be justified as advancing the traditional "core concerns" of the Twenty-first Amendment. We therefore reverse the district court's judgment and remand the case with directions to the district court to enter judgment in favor of the plaintiffs.

### PROCEDURAL AND FACTUAL BACKGROUND

Michigan regulates alcohol sales under a "three-tier system": consumers must purchase alcoholic beverages from licensed retailers; retailers must purchase them from licensed

---

consumers.

Documents filed on behalf of the defendants included reports from the Michigan Department of Treasury, Office of Revenue and Tax Analysis, which detailed estimates of lost tax revenue to remote sales; an affidavit from the manager of the Manufacturers and Wholesalers Section of the Licensing Division of the Michigan Liquor Control Commission that listed all licensed "Outstate Seller of Wine" license holders; an affidavit from the director of the Licensing Division of the Michigan Liquor Control Commission averring that, of the wineries from which the plaintiffs wish to purchase wine, some are licensed as out-of-state sellers, and the others have not applied for such licenses; an affidavit from the director of the Enforcement Division of the Michigan Liquor Control Commission detailing the number of "controlled buy operations" conducted by the Commission in Michigan to identify retailers that sell alcohol to minors; an affidavit from an assistant in the Liquor Control Division of the Michigan Department of Attorney General, detailing controlled buy operations conducted over the internet; and an (unsworn) statement by Sen. Orrin Hatch, made before the Senate Judiciary Committee, entitled "Interstate Alcohol Sales and the 21st Amendment."

wholesalers; and wholesalers must purchase them from licensed manufacturers. This system is similar to that used by most states. *See* Vijay Shankar, *Alcohol Direct Shipment Laws*, 85 Va. L. Rev. 353, 355 (1999).

The plaintiffs allege that Michigan's system discriminates against out-of-state wineries in favor of in-state wineries because it prevents out-of-state wineries from shipping wine directly to Michigan consumers, which in-state wineries are allowed to do. As the district court correctly noted, this distinction between in-state and out-of-state wineries can only be understood by reading a number of provisions in conjunction with each other:

[The distinction] can be gleaned from various Michigan Liquor Control Commission regulations, which are codified within the Michigan Administrative Code. R436.1057 states that "[a] person shall not deliver, ship, or transport into this state beer, wine, or spirits without a license authorizing such action. . . ." The only applicable license, an "outstate seller of wine license," may according to R436.1705(2)(d) be obtained by a "manufacturer which is located outside of this state, but in the United States, and which produces and bottles its own wine." However, under R436.1719(4) the holder of such a license may ship wine "only to a licensed wholesaler at the address of the licensed premises except upon written order of the commission." In answers to interrogatories, a representative of the Michigan Liquor Control Commission indicates that "[a]t present, there is no procedure whereby an out-of-state retailer or winery can obtain a license or approval to deliver wine directly to Michigan residents . . . ."

In contrast, the Michigan Liquor Control Commission indicates that the "ability to deliver wine to the consumer is available to winemakers licensed in Michigan, inasmuch as under the provisions of MCL 436.1113(9) these licensees are permitted to sell at retail the wines

they manufacture. . . . A licensed Michigan winemaker may deliver their [sic] own products to customers without an SDM [specially designated merchant] license . . . .

The plaintiffs contend that this differential treatment of in-state and out-of-state wineries violates the dormant Commerce Clause because it gives in-state wineries a competitive advantage over out-of-state wineries. In-state wineries can, for example, bypass the price mark-ups of a wholesaler and retailer, making in-state wines relatively cheaper to the consumer and allowing them to realize more profit per bottle. In addition, the cost to an out-of-state winery of the license that enables it to sell to a Michigan wholesaler is $300, while a comparable Michigan winery must pay only a $25 license fee to qualify to ship wine directly to Michigan customers. Finally, for customers who desire home delivery, Michigan wineries have a competitive advantage over out-of-state wineries that cannot ship directly to customers. In response, the state argues that the regulations to which an in-state winery is subject "more than offset, both in costs and burden, any nominal commercial advantage given by the ability to deliver directly to customers" and characterizes the burden on out-of-state wineries as "de minimis."

In its order granting summary judgment to the state and denying summary judgment to the plaintiffs, the district court held that "Michigan's direct shipment law is a permitted exercise of state power under § 2 of the 21st Amendment" because it is not "mere economic protectionism." In reaching this conclusion, the court found that Michigan's statutory scheme was designed "to ensure the collection of taxes from out-of-state wine manufacturers and to reduce the risk of alcohol falling into the hands of minors."

After this order had issued, the plaintiffs filed a motion to reconsider, asking the district court to rule on the motions to strike before granting either side summary judgment and to

"make specific findings of fact based on the record" before reaching a final decision. The plaintiffs argued that the district court's failure to rule on the motions to strike "left the record devoid of evidence supporting the court's conclusion that the direct shipment law furthers legitimate 21st Amendment purposes," and that the court had applied the incorrect legal standard in dismissing the complaint. The district court denied the plaintiffs' motion for reconsideration, saying that it had not considered the challenged evidence in ruling on the summary judgment motions and that the motions to strike were effectively denied as moot.

For the reasons set out below, we reverse the district court's judgment, vacate the order granting summary judgment in the state's favor, and remand the case for entry of summary judgment in favor of the plaintiffs.

### DISCUSSION

The central question in this case is how the "dormant" Commerce Clause and the Twenty-first Amendment interact to limit the ways in which a state can control alcohol sales and distribution. Article I, Section 8, Clause 3 of the United States Constitution grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes . . . ." The Supreme Court has long held that "this affirmative grant of authority to Congress also encompasses an implicit or 'dormant' limitation on the authority of the States to enact legislation affecting interstate commerce." *Healy v. The Beer Institute*, 491 U.S. 324, 326 n.1 (1989) (citations omitted).

In 1933, Congress enacted the Twenty-first Amendment, which repealed the 18th Amendment, thereby ending Prohibition. Section 2 of the Twenty-first Amendment prohibits "[t]he transportation or importation into any State, Territory or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof . . . ." Initially, the Supreme Court afforded the states

nearly limitless power to regulate alcohol under the new amendment. *See*, *e.g.*, *Ziffrin, Inc. v. Reeves*, 308 U.S. 132, 138 (1939) ("The Twenty-first Amendment sanctions the right of a state to legislate concerning intoxicating liquors brought from without, unfettered by the Commerce Clause."); *Indianapolis Brewing Co. v. Liquor Control Comm'n*, 305 U.S. 391, 394 (1939) ("Since the Twenty-first Amendment . . . the right of a state to prohibit or regulate the importation of intoxicating liquor is not limited by the Commerce Clause. . . ."); *State Bd. of Equalization v. Young's Market Co.*, 299 U.S. 59 (1936).

The state relied on these cases in the district court, but we find that reliance disingenuous at best because, as early as the 1960s, the Supreme Court signaled a break with this line of reasoning. In *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 331-32 (1964), a case involving the prohibition of liquor sales to departing international airline travelers, the Court observed:

> To draw a conclusion from this line of decisions [*Ziffrin*, *Young's Market*, etc.] that the Twenty-first Amendment has somehow operated to 'repeal' the Commerce Clause wherever regulation of intoxicating liquors is concerned would, however, be an absurd oversimplification. If the Commerce Clause had been pro tanto 'repealed,' then Congress would be left with no regulatory power over interstate or foreign commerce in intoxicating liquor. Such a conclusion would be patently bizarre and is demonstrably incorrect. . . .

> Both the Twenty-first Amendment and the Commerce Clause are parts of the same Constitution. Like other provisions of the Constitution, each must be considered in the light of the other, and in the context of the issues and interests at stake in any concrete case.

The Supreme Court's approach to cases involving the intersection of the Commerce Clause and the Twenty-

first Amendment has continued to develop since *Hostetter*. In *Capital Cities Cable v. Crisp*, 467 U.S. 691 (1984), although not a liquor importation or Commerce Clause case, the Court found that a state ban on alcohol advertising conflicted with regulations of the Federal Communications Commission. The Court applied a balancing test to determine "whether the interests implicated by a state regulation are so closely related to the powers reserved by the [Twenty-first] Amendment that the regulation may prevail, notwithstanding that its requirements directly conflict with express federal policies." *Id.* at 714. The Court concluded that the federal interest must prevail because the state's banning of alcohol advertising did not directly relate to the core concerns of the Twenty-first Amendment, *i.e.,* to exercise "control over whether to permit importation or sale of liquor and how to structure the liquor distribution system." *Id.* at 715 (quotation omitted).

In subsequent cases, the Supreme Court has continued to analyze challenges to state alcohol laws by determining how closely related the law in question is to the "core concerns" of the Twenty-first Amendment. Shortly after *Capital Cities* was decided, the Court issued *Bacchus Imports v. Dias*, 468 U.S. 263 (1984), in which out-of-state wholesalers challenged a Hawaii excise tax exemption for certain locally produced alcoholic beverages. The state argued that the statute advanced legitimate state interests, that it imposed no patent discrimination against interstate trade, and that the effect on interstate commerce was minimal. *Id.* at 270. The Court rejected these defenses, finding that "the legislation constitutes 'economic protectionism' in every sense of the phrase," *id.* at 272, and noting that "one thing is certain: The central purpose of the [21st Amendment] was not to empower States to favor local liquor industries by erecting barriers to competition." *Id.* at 276. Instead, the Court considered "whether the principles underlying the [Twenty-first] Amendment are sufficiently implicated by the [tax exemption] to outweigh the Commerce Clause principles that

would otherwise be offended." *Id.* at 275. In *Bacchus*, the state did not contest that the law's purpose was "to promote a local industry," so the Court did not have to engage in the normal Commerce Clause analysis of whether the law was sufficiently closely related to the promotion of lawful interests to vitiate its discriminatory effect. Instead, it found that the law discriminated against interstate commerce in violation of the Commerce Clause and was therefore unconstitutional.

Since *Bacchus*, the Supreme Court has been less than prolific in construing the content of the Twenty-first Amendment's "core concerns," addressing the definition of "core concerns" only once – and then only in a plurality opinion. In *North Dakota v. United States*, 495 U.S. 423 (1990), the Court had before it an intergovernmental immunity case, rather than a Commerce Clause challenge. At issue was whether North Dakota's reporting and labeling requirements were constitutional, despite interfering with contrary federal interests in selling liquor to military personnel. The Court upheld the statute, finding that the state regulations "fall within the core of the State's power under the Twenty-first Amendment" because they were enacted "[i]n the interest of promoting temperance, ensuring orderly market conditions, and raising revenue . . . ." *Id.* at 432.

But, because *North Dakota* did not involve a Commerce Clause challenge, the *analysis* in the plurality opinion cannot be taken to control the analysis in this case. That is, we do not interpret the "in the interest of" language to mean that a state need only be *motivated* by the "core concerns" of the Twenty-first Amendment to shield its laws from constitutional scrutiny. Under a Commerce Clause analysis, facially discriminatory laws are still subject to strict scrutiny, meaning that the state must demonstrate that no reasonable nondiscriminatory alternatives are available to advance the same legitimate goals. *See, e.g.*, *Hughes v. Oklahoma*, 441 U.S. 322, 336-7 (1979) (finding that, "[a]t a minimum," a statute that "on its face discriminates against interstate

commerce . . . invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives"). Likewise, the language in *North Dakota* to the effect that the states have "virtually complete control" over the importation and sale of liquor, although heavily emphasized by the district court in this case, has little value in a case requiring a Commerce Clause analysis. Because *North Dakota* did not involve interpretation of the Commerce Clause, we reject the implication that a state's "virtually complete control" over liquor regulation enables it to discriminate against out-of-state interests in favor of in-state interests. *Bacchus* simply forbids such an analysis.

Given this background, we cannot endorse the district court's characterization of the regulation in this case as a constitutionally benign product of the state's three-tier system and, thus, "a proper exercise of [Michigan's Twenty-first Amendment] authority, despite the fact that such a system places a minor burden on interstate commerce." Instead, we invoke Justice Scalia's view, expressed in an opinion concurring in the Supreme Court majority's decision striking down a state price-affirmation statute, in which he explained that:

> [The law's] invalidity is fully established by its facial discrimination against interstate commerce . . . . This is so despite the fact that the law regulates the sale of alcoholic beverages, since its discriminatory character eliminates the immunity afforded by the Twenty-first Amendment.

*Healy v. Beer Institute*, 491 U.S. 324, 344 (1989) (Scalia, J., concurring) (citations omitted).

The proper approach in this case, then, is to apply the traditional dormant Commerce Clause analysis and, if the provisions are unconstitutional under the Commerce Clause, to determine whether the state has shown that it has no

reasonable nondiscriminatory means of advancing the "core concerns" of the Twenty-first Amendment.

In reviewing challenges brought under the Commerce Clause, the Supreme Court has long held that statutes that facially discriminate are "virtually *per se*" invalid, citing as a clear example "a law that overtly blocks the flow of interstate commerce at a State's borders." *Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978). However, a lower level of scrutiny is applied when a statute does not discriminate on its face:

> Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. . . . [T]he extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Id.*, quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Moreover, we have recognized the following test for determining whether state economic regulations violate the dormant Commerce Clause:

> When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, [the Supreme Court has] generally struck down the statute without further inquiry. When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, [the Supreme Court has] examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits. In either situation the critical consideration is the overall effect of the statute on both local and interstate activity.

*McNeilus Truck & Mfg., Inc. v. Ohio ex rel. Montgomery*, 226 F.3d 429, 442 (6th Cir. 2000) (quotations omitted).

As we indicated in *McNeilus*, the proper starting point for dormant Commerce Clause analysis is to determine whether, in fact, the state provision "directly, in effect, or in purpose treats in-state and out-of-state interests differently . . . ." *Id.* If a court finds that the statute does discriminate, then the issue becomes, applying "rigorous scrutiny [,] . . . whether the statute serves a legitimate state interest that cannot otherwise be met." *Id.* In other words, laws that facially discriminate are normally invalid, unless they advance "a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 278 (1988) (citations omitted).

Here, it is clear that the Michigan statutory and regulatory scheme treats out-of-state and in-state wineries differently, with the effect of benefitting the in-state wineries and burdening those from out of state. As discussed above, Michigan wineries enjoy both greater access to consumers who wish to have wine delivered to their homes, and greater profit through their exemption from the three-tier system. Out-of-state wineries, on the other hand, must participate in the costly three-tier system, to their economic detriment and, although this is not clear from the record, may be shut out of the Michigan market altogether if unable to obtain a wholesaler. The Fourth Circuit reached a similar conclusion in a case considering North Carolina's alcohol distribution system, which is nearly identical to Michigan's. In *Beskind v. Easley*, 325 F.3d 506 (4th Cir. 2003), the court found that North Carolina's alcohol distribution laws, which discriminate against out-of-state wineries in favor of in-state wineries, are unconstitutional unless "the State can show that it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Id.* at 515 (internal quotations and citations omitted).

Having determined that the provision is facially discriminatory, we now turn to the question of whether the regulatory scheme is nevertheless constitutional because it "fall[s] within the core of the State's power under the Twenty-first Amendment," having been enacted "in the interest of promoting temperance, ensuring orderly market conditions, and raising revenue," *North Dakota v. United States*, 495 U.S. 423, 432 (1990), and because these interests "cannot be adequately served by reasonable nondiscriminatory alternatives." *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 278 (1988) (citations omitted).

We conclude, based on the evidence in the record, that defendants have not shown that the Michigan scheme's discrimination between in-state and out-of-state wineries furthers any of the concerns listed above, much less that no reasonable non-discriminatory means exists to satisfy these concerns. This is so even if, taking the evidence in the light most favorable to defendants, we assume that all of the evidence they submitted was admissible. It is important to keep in mind that the relevant inquiry is not whether Michigan's three-tier system *as a whole* promotes the goals of "temperance, ensuring an orderly market, and raising revenue," but whether the discriminatory scheme challenged in this case – the direct-shipment ban for out-of-state wineries – does so. *See, e.g.*, *Beskind*, 325 F.3d at 517 ("The question is not whether North Carolina can advance its regulatory purpose by imposing fewer burdens on in-state wineries than out-of-state wineries . . . . Rather, the question is whether *discriminating* in favor of in-state wineries . . . serves a Twenty-first Amendment interest."). Obviously, the state bears the burden of justifying a discriminatory statute, and "the standards for such justification are high." *New Energy Co.*, 486 U.S. at 278; *see also Cooper v. McBeath*, 11 F.3d 547, 553 (5th Cir. 1994) (describing the burden of proof faced by the state as "towering"); *Hughes v. Oklahoma*, 441 U.S. 322, 337 (1979) ("[F]acial discrimination by itself may be a fatal defect. . . . [A]t a minimum [it] invokes the strictest scrutiny.").

The district court correctly recognized that state liquor laws are not completely immune from Commerce Clause challenges, but it placed too much reliance on Supreme Court precedent that has specifically upheld the three-tier distribution system, quoting *North Dakota v. United States*, 495 U.S. at 431, for the proposition that the states have "virtually complete control" over the importation and sale of liquor. As we noted above, however, *North Dakota* involved a Supremacy Clause challenge and did not implicate the Commerce Clause. It therefore cannot be relied on in this case in light of Supreme Court cases that do discuss the intersection of the Twenty-first Amendment and the Commerce Clause, such as *Bacchus*.

Nor do we find persuasive the district court's reliance on three additional cases. One, *House of York, Ltd. v. Ring*, 322 F. Supp. 530 (S.D.N.Y. 1970), is a district court opinion that pre-dates *Bacchus*. The second, *Bainbridge v. Bush*, 148 F. Supp.2d 1306 (M.D.Fla. 2001), has subsequently been reversed. *See Bainbridge v. Turner*, 311 F.3d 1104 (11th Cir. 2002) (holding that the state must show that an alcohol-distribution statute that discriminates between in-state and out-of-state wineries furthers core concerns of the Twenty-first Amendment in order to survive a Commerce Clause challenge). The third, *Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848 (7th Cir. 2000), is the sole federal court of appeals decision to find that analogous direct shipment laws are constitutional under the Twenty-first Amendment. However, *Bridenbaugh* is distinguishable on its facts, and it has been criticized by several federal courts for its failure to engage in the requisite dormant Commerce Clause analysis. *See, e.g.*, *Bolick v. Roberts*, 199 F. Supp.2d 397, 408 (E.D. Va. 2002) (finding *Brindenbaugh* "improperly decided because it does not rely on the established dormant Commerce Clause analysis"); *Dickerson v. Bailey*, 212 F. Supp.2d 673, 682 (S.D. Tex. 2002) (observing that in its "concentration on Indiana's three-tiered scheme . . . [the court] did not discuss the last forty years of Supreme Court jurisprudence relating to balancing and harmonizing the dormant commerce clause

and §2 of the twenty-first Amendment"), *aff'd*, *Dickerson v. Bailey*, 336 F.3d 388 (5th Cir. 2003) (finding that *Brindenbaugh* was factually distinguishable from that case); *Bainbridge v. Turner*, 311 F.3d 1104, 1114 n.15 (11th Cir. 2002) (commenting that the court "disagree[s] with the analytical framework used in [*Bridenbaugh*]").

For example, *Bridenbaugh* did not involve any out-of-state wineries as plaintiffs, and it thus addressed only whether the Indiana statute discriminated against customers who wanted to have out-of-state wine shipped directly to them. Furthermore, it appears the Indiana statutes differ from the provisions at issue here, as the court found that "Indiana insists that *every* drop of liquor pass through its three-tiered system and be subjected to taxation." *Bridenbaugh*, 227 F.3d at 853. Michigan, on the other hand, effectively exempts in-state wineries from the three-tier system, an exemption it does not extend to out-of-state wineries. Finally, in contrast to this case, the *Bridenbaugh* plaintiffs were "concerned only with direct shipments from out-of-state sellers who lack *and do not want* Indiana permits." *Id.* at 854. By contrast, the plaintiffs in this case are willing to acquire Michigan permits and pay taxes on wines shipped; they simply want to be eligible for such permits on the same basis as in-state wineries. For all of these reasons, we do not find the opinion in *Bridenbaugh* persuasive.

The district court in this case was correct in finding that the Michigan alcohol distribution system discriminates between in-state and out-of-state interests to the extent that in-state wineries may obtain licenses to ship wine directly to consumers, but out-of-state wineries may not and are instead required to go through the more costly three-tier system. What the district court did not do was undertake the necessary analysis that follows from such a finding. Instead, it concluded that Michigan's system "cannot be characterized as 'mere economic protectionism,'" because the system furthers the "core concerns" of the Twenty-first Amendment. The district court's observation that "[t]he Michigan

Legislature has chosen this path to ensure the collection of taxes from out-of-state wine manufacturers and to reduce the risk of alcohol falling into the hands of minors" and its conclusion that "the 21st Amendment gives it the power to do so," without more, do not constitute strict scrutiny, as required by Supreme Court precedent. It is not enough that the Michigan Legislature has chosen this particular regulatory scheme to further what are legitimate objectives. The proper inquiry, detailed above, is whether it "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 278 (1988). We find no evidence on this record that it does.

### CONCLUSION

For the reasons set out above, we REVERSE the judgment of the district court granting summary judgment to the defendants and REMAND the case for entry of judgment in favor of the plaintiffs.