The Honorable Joe McLeland State Representative, 94th District State Capitol, Room 182-W Topeka, Kansas 66612
Dear Representative McLeland:
You request our opinion regarding pending legislation that would allow Kansas residents to purchase wine directly from out-of — state wineries. You question whether these legislative proposals would violate the Commerce Clause of the United States Constitution.[1]
You reference three bills that have been considered by the Legislature dealing with this issue: 2004 Senate Bill No. 305, New Section 16, as proposed by the Select Committee on Judiciary; 2004 House Bill No. 2637; and 2003 House Substitute for Senate Bill No. 2, New Section 9. While the language of these bills is not identical, the gist of each of them is that consumers would be able to purchase wine, by telephone, mail or Internet, from a person licensed to sell wine in a state other than Kansas, if the purchase is for the consumer's personal use and not for resale. Such wine would not be shipped directly to the consumer, but would instead be shipped to a Kansas licensed retailer, where it could be picked up by the consumer during that licensee's normal business hours. The Kansas licensed retailer would then be required to check the age of the purchaser, collect all relevant taxes and record the delivery. Kansas retailers would be allowed to charge the purchaser a handling fee not to exceed five dollars per case or partial case of wine received on behalf of the purchaser. The bills do not apply to Kansas licensed wineries, and thus Kansas wineries[2] would not be able to sell directly to consumers pursuant to the provisions of these bills.
Kansas licensed wineries would continue to be subject to the provisions of K.S.A. 41-308a and K.A.R. 14-11-7, which currently provide in pertinent part:
"(a) A farm winery license shall allow:
. . . .
 "(2) the sale of wine, manufactured by the licensee, to licensed wine distributors, retailers, clubs, drinking establishments and caterers;
 "(3) the sale, on the licensed premises in the original unopened container to consumers for consumption off the licensed premises, of wine manufactured by the licensee; . . ."[3]
and
 "Retail sales of domestic table wine by a farm winery shall be made only on and within the licensed premises. Deliveries of domestic table wine sold at retail by a farm winery shall be made only within the licensed premises for off-premise consumption."[4]
Thus, unless existing statutes are amended to so allow, Kansas licensed wineries would not be able to sell wine directly to a consumer via telephone, mail or Internet for pickup at a Kansas licensed retailer's licensed premises.[5]
Article I, Section 8 of the United States Constitution, the portion commonly known as the Commerce Clause, provides:
 "The Congress shall have Power . . . To regulate Commerce . . . among the several States. . . ."
While this provision does not expressly limit the authority of states to regulate interstate commerce, the United States Supreme Court has long held that "this affirmative grant of authority to Congress also encompasses an implicit or `dormant' limitation on the authority of the States to enact legislation affecting interstate commerce."[6] "This `negative' aspect of the Commerce Clause prohibits economic protectionism — that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors."[7] Thus, violation of the dormant Commerce Clause would involve discriminatory state regulation that, either on its face or by its affect, favors in-state interests to the disadvantage of out-of-state interests.[8]
The legislative proposals at issue here would actually open up interstate commerce, to an extent de-regulating it, in the area of out-of-state wine sales to Kansas consumers; currently such "direct" sales by wineries licensed in other states are prohibited. Further, if anything, the proposed legislation would favor out-of-state wineries over in-state wineries as opposed to discriminating against or burdening interstate commerce. Therefore, the proposals would not appear to run afoul of the dormant Commerce Clause.
Several jurisdictions have recently analyzed direct ship legislation in other states, reaching differing conclusions on whether the Commerce Clause is violated by such legislation.[9] Each analyzes whether theTwenty-first Amendment to the United States Constitution "saves" what would otherwise be a Commerce Clause violation. However, all of these cases involve state legislative enactments that clearly favor in-state interests while burdening out-of-state interests (allowing state-licensed wineries to direct ship but not out — of-state wineries), so they are of little value in analyzing the Kansas legislation with which you are concerned. However, these cases do evidence a willingness in the industry to challenge legislation they consider unfair or discriminatory and we have no reason to believe that Kansas would be immune from such challenges, regardless of their chances of success.
You also inquire whether the proposed legislation would "jeopardize the State's ability to effectively regulate the sale of alcoholic liquor through the three tier system." Allowing consumers to purchase directly from wineries not licensed in Kansas would be an exception to the general three tier system requirement that manufacturers sell only to Kansas licensed distributors[10] who then sell only to other licensed distributors or Kansas licensed retailers[11] and, generally, only Kansas licensed retailers sell packaged liquor to consumers in Kansas.[12] The bills do contain provisions requiring delivery of wine purchased from an out-of-state winery to a Kansas licensed retailer who must then ascertain the age of the purchaser, collect taxes on the product and make a report of the transaction, but the State of Kansas would have no regulatory authority over the out-of-state wineries.[13]
Whether these measures are sufficient to allow the State to effectively regulate the sale of wine by wineries licensed in other states is a question of fact properly addressed to the agency responsible for such regulation, the Division of Alcoholic Beverage Control.
Finally, you inquire whether the term "wines not currently available in Kansas" is sufficiently defined in these legislative proposals. We note that the term is not defined in any of the bills. To avoid possible confusion, a definition in the statute would be helpful. Alternatively, if given such authority, the Director of the Division of Alcoholic Beverage Control could define the term by rules and regulations.
In conclusion, because the provisions in 2004 Senate Bill No. 305, 2004 House Substitute for Senate Bill No. 2 and 2004 House Bill No. 2637 dealing with purchase of wine from wineries licensed in other states do not favor in-state wineries over out-of-state wineries or otherwise burden interstate commerce, they do not violate the Commerce Clause of the United States Constitution.
Very truly yours,
 PHILL KLINE Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
PK:JLM:jm
[1] U.S. Const., Art. I, § 8.
[2] Unless also licensed to sell wine in a State other than Kansas.
[3] K.S.A. 41-308a. Farm wineries are authorized to apply for up to two outlet licenses, thereby allowing them to sell directly to consumers from up to three locations in the state, K.S.A. 41-308a(b).
[4] K.A.R. 14-11-7.
[5] The sale of wine to licensed retailers would be accomplished in accordance with the statutes regulating those licensed entities.
[6] Healy v. The Beer Institute, 491 U.S. 324, 326 n. 1, 109 S.Ct. 2491,105 L.Ed.2d 275 (1989); In re Barton-Dobenin, 269 Kan. 851, 855-56
(2000).
[7] Wyoming v. Oklahoma, 502 U.S. 437, 454, 112 S.Ct. 789, 117 L.Ed.2d 1
(1992) (quoting New Energy Co. of Indiana v. Limbach, 486 U.S. 269, 273-34,108 S.Ct. 1803, 100 L.Ed.2d 302 (1988).
[8] See Oregon Waste Systems, Inc. v. Dep't of Environmental Quality,511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994) (as prohibited by the dormant Commerce Clause, discrimination means "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter"); 16 Am.Jur.2d Constitutional Law § 31 (1998).
[9] Swedenburg v. Kelly, 358 F.3d 223 (2nd Cir. 2004), petition forcert. filed, 72 USLW 3600 (March 5, 2004); Heald v. Engler, 342 F.3d 517
(6th Cir. 2003) petition for cert. filed, 72 USLW 3507 (Jan. 30, 2004);Dickerson v. Baily, 336 F.3d 388 (5th Cir. 2003); Beskind v. Easley,325 F.3d 506 (4th Cir. 2003); Bainbridge v. Turner, 311 F.3d 1104 (11th Cir. 2002); Bridenbaugh v. Freeman-Wilson, 227 F.3d 848 (7th Cir. 2000),cert. denied Bridenbaugh v. Carter, 532 U.S. 1002, 121 S.Ct. 1672,149 L.Ed.2d 652 (2001).
[10] K.S.A. 41-305.
[11] K.S.A. 41-306(b), 41-306a(b), (c), 41-307(b). The rules differ slightly depending on whether the licensee is a spirit, wine or beer distributor, but the three-tier system operates for all three.
[12] K.S.A. 41-308(a). But see K.S.A. 41-308a(a)(3), (b), 41-308b(a)(3) wherein manufacturers of wine and beer may sell directly to consumers on their licensed premises.
[13] S.B. 305, § 16(c), as introduced; House Subst. for S.B. 2, § 9(c), as amended by the Senate COW; H.B. 2637, § 1(c), as introduced.