PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PETER BROOKS; DAVID T. GIES;
PATRICIA CLEMMER PETERS; ROBIN B.
HEATWOLE; DRY COMAL CREEK
VINEYARDS, a Texas Corporation;
HOOD RIVER VINEYARDS, an Oregon
Sole Proprietorship; SCHNEIDER
LIQUOR COMPANY, INCORPORATED,
           *Plaintiffs-Appellees,*

    and

MIURA VINEYARDS, a California
Limited Liability Company; CLINT
BOLICK,
           *Plaintiffs,*

    v.

ESTHER H. VASSAR, Chairman,
Virginia Department of Alcoholic
Beverage Control; PAMELA O'BERRY
EVANS, Commissioner, Virginia
Department of Alcoholic Beverage
Control; SUSAN R. SWECKER,
Commissioner, Virginia Department
of Alcoholic Beverage Control,
           *Defendants-Appellants,*

    and

VIRGINIA WINE WHOLESALERS
ASSOCIATION, INCORPORATED,
           *Intervenor-Defendant.*

    No. 05-1540

VIRGINIA VINEYARDS ASSOCIATION,
           *Movant.*

PETER BROOKS; DAVID T. GIES;
PATRICIA CLEMMER PETERS; ROBIN B.
HEATWOLE; DRY COMAL CREEK
VINEYARDS, a Texas Corporation;
HOOD RIVER VINEYARDS, an Oregon
Sole Proprietorship; SCHNEIDER
LIQUOR COMPANY, INCORPORATED,
                    *Plaintiffs-Appellees,*

                and

MIURA VINEYARDS, a California
Limited Liability Company; CLINT
BOLICK,
                         *Plaintiffs,*

                 v.

ESTHER H. VASSAR, Chairman,
Virginia Department of Alcoholic
Beverage Control; PAMELA O'BERRY
EVANS, Commissioner, Virginia
Department of Alcoholic Beverage
Control; SUSAN R. SWECKER,
Commissioner, Virginia Department
of Alcoholic Beverage Control,
                        *Defendants,*

                and

VIRGINIA WINE WHOLESALERS
ASSOCIATION, INCORPORATED,
                *Intervenor-Defendant-*
                        *Appellant.*

————————————————

VIRGINIA VINEYARDS ASSOCIATION,
                         *Movant.*

No. 05-1541

PETER BROOKS; DAVID T. GIES;
PATRICIA CLEMMER PETERS; ROBIN B.
HEATWOLE; DRY COMAL CREEK
VINEYARDS, a Texas Corporation;
HOOD RIVER VINEYARDS, an Oregon
Sole Proprietorship; SCHNEIDER
LIQUOR COMPANY, INCORPORATED,
*Plaintiffs-Appellants,*

and

MIURA VINEYARDS, a California
Limited Liability Company; CLINT
BOLICK,
*Plaintiffs,*

v.

ESTHER H. VASSAR, Chairman,
Virginia Department of Alcoholic
Beverage Control; PAMELA O'BERRY
EVANS, Commissioner, Virginia
Department of Alcoholic Beverage
Control; SUSAN R. SWECKER,
Commissioner, Virginia Department
of Alcoholic Beverage Control,
*Defendants-Appellees,*

and

VIRGINIA WINE WHOLESALERS
ASSOCIATION, INCORPORATED,
*Intervenor-Defendant.*

VIRGINIA VINEYARDS ASSOCIATION,
*Movant.*

No. 05-1791

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge;
Dennis W. Dohnal, Magistrate Judge.
(CA-99-755-RLW)

Argued: May 26, 2006

Decided: September 11, 2006

Before NIEMEYER and TRAXLER, Circuit Judges, and
Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

---

Affirmed in part; reversed in part; and dismissed in part, vacated and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Traxler concurred except as to Part III.B and Judge Goodwin concurred except as to Parts III and IV. Judge Traxler wrote an opinion concurring in part and concurring in the judgment. Judge Goodwin wrote an opinion concurring in Parts I, II, and V and dissenting from Parts III and IV.

---

**COUNSEL**

**ARGUED:** William Eugene Thro, State Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellants/Cross-Appellees. Daniel Roy Ortiz, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellees/Cross-Appellants. **ON BRIEF:** Judith Williams Jagdmann, Attorney General of Virginia, Carla R. Collins, Associate State Solicitor General, Ronald N. Regnery, Associate State Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Esther H. Vassar, Chairman, Pamela O'Berry Evans, Commissioner, and Susan R. Swecker, Commissioner, Virginia Alcoholic Beverage Control Board; Walter A. Marston, Jr., REED SMITH, L.L.P., Richmond, Virginia, for Virginia Wine Wholesalers Association, Inc.

**OPINION**

NIEMEYER, Circuit Judge:

This appeal involves a facial challenge, under the dormant Commerce Clause of the United States Constitution, to various aspects of Virginia's Alcoholic Beverage Control Act ("ABC Act"), Va. Code § 4.1-100 *et seq.*, which generally prohibits the importation, distribution, and sale of wine and beer in Virginia except through a regulated, three-tier structure. We sustain the constitutionality of:

(1)   Virginia Code § 4.1-310(E), which provides an exception to the three-tier import restriction for consumers who personally carry into Virginia no more than one gallon (or four liters) of alcoholic beverages for personal consumption; and

(2)   Virginia Code § 4.1-119(A), which authorizes state-owned and -operated ABC stores to market and sell only wine produced at Virginia "farm" wineries.

Accordingly, with respect to these two aspects of the ABC Act, we reverse the judgment of the district court, which concluded that these provisions unconstitutionally discriminated against interstate commerce.

With respect to challenged provisions of the ABC Act that permit in-state producers of wine and beer, but not out-of-state producers, to bypass the three-tier structure and sell directly to in-state retailers and consumers — Virginia Code §§ 4.1-112.1(B); 4.1-207(4),(5); 4.1-208(1),(7) — we conclude that Virginia legislative amendments enacted while this appeal was pending render the challenge to those provisions moot and therefore bar us from considering the district court's order and the amended provisions. Accordingly, with respect to them, we dismiss the appeals, vacate the district court's judgment, and remand for dismissal of the claims challenging those provisions.

Finally, with respect to the district court's conclusion that the plaintiffs in this case are entitled to maintain their action under 42

U.S.C. § 1983 and therefore qualify for an award of attorneys fees if they are the prevailing party, as provided by 42 U.S.C. § 1988, we affirm.

I

Through its ABC Act, which was enacted following the ratification of the Twenty-first Amendment and the end of Prohibition, Virginia regulates the distribution and sale of alcoholic beverages under a three-tier structure. Under this structure, producers and sellers of alcoholic beverages may sell in Virginia only to Virginia-licensed wholesalers, who in turn may sell only to Virginia-licensed retailers, who may then sell to consumers.

In November 1999, Clint Bolick and Robin Heatwole, individual consumers of wine and beer, and Dry Comal Creek Winery, Miura Vineyards, and Hood River Vineyard, wineries based in Texas, California, and Oregon, respectively, commenced this action under 42 U.S.C. § 1983 against the members of Virginia's Alcoholic Beverage Control ("ABC") Board, alleging that Virginia's ABC Act violated the dormant Commerce Clause of the United States Constitution by favoring in-state wine and beer producers and discriminating against out-of-state producers. The district court granted summary judgment to the plaintiffs, sustaining the plaintiffs' challenges and enjoining the enforcement of the relevant portions of the ABC Act. *See Bolick v. Roberts*, 199 F. Supp. 2d 397, 416-17 (E.D. Va. 2002) ("*Bolick I*"). Virginia appealed that decision to this court.

While the appeal of *Bolick I* was pending, the Virginia General Assembly enacted H.B. 1652 and S.B. 1117, which modified some of the contested statutory provisions. Virginia claimed on appeal that the legislative changes mooted portions of the case and altered the arguments and analysis necessary to adjudicate the remaining issues. We agreed. In *Bolick v. Danielson*, 330 F.3d 274 (4th Cir. 2003) ("*Bolick II*"), we vacated the district court's order and remanded the case for reconsideration in light of our intervening opinion in *Beskind v. Easley*, 325 F.3d 506 (4th Cir. 2003), which addressed a similar challenge to North Carolina's ABC laws.

On remand, the plaintiffs filed a second amended complaint that substituted new plaintiffs and modified the plaintiffs' claims to take

into account the revisions enacted by the Virginia General Assembly. The original "winery plaintiffs," Dry Comal Creek Winery and Hood River Vineyards, were joined by Peter Brooks, David T. Gies, and Patricia Clemmer Peters, consumers of wine and beer, and by Schneider Liquor Company, a wine and beer retailer incorporated and licensed in the District of Columbia. In their second amended complaint, the plaintiffs identify five aspects of Virginia's ABC Act, as amended, that they allege unconstitutionally discriminate against out-of-state producers and sellers of alcoholic beverages:

> The *first* is the "Distribution Privilege" of in-state wineries and breweries by which in-state wineries and breweries, but not out-of-state wineries and breweries, are allowed to bypass the wholesale level and sell and deliver unlimited amounts of wine and beer directly to in-state retailers. *See* Va. Code §§ 4.1-207(4),(5); 4.1-208(1),(7).

> The *second* is a "Delivery Privilege" conferred on in-state producers to deliver unlimited amounts of wine and beer directly to consumers provided the producers use their own mode of transportation to perform deliveries, while limiting out-of-state producers and sellers to two cases per month using common carriers. *See id.* §§ 4.1-207(4),(5); 4.1-208(1),(7).

> The *third* is a "Shipping Privilege" which favors in-state retailers. All retailers are required to obtain licenses to sell and ship directly to Virginia consumers, but out-of-state retailers are also required to obtain written permission from the producer of each type of wine or beer that the retailer planned to ship into Virginia. *See id.* § 4.1-112.1(B).

> The *fourth* is a "Personal Import Exception" that allows individual consumers to import into Virginia one gallon or four liters (if packaged in metric containers) of wine and beer without requiring the wine and the beer to be sold through the three-tier system. *See id.* § 4.1-310(E).

> And the *fifth* is an "ABC Stores Restriction," limiting state-owned and -operated ABC stores to marketing and selling

only wine produced by Virginia "farm" wineries. *See id.* § 4.1-119(A).

On the parties' cross-motions for summary judgment, the district court held that the challenged portions of the ABC Act unconstitutionally discriminated against out-of-state wine and beer producers and sellers and that those portions were not saved by the Twenty-first Amendment. In its judgment, dated April 27, 2005, the court declared unconstitutional and enjoined the enforcement of Virginia Code §§ 4.1-112.1(B); 4.1-207(4),(5); 4.1-208(1),(7); 4.1-310(E); and 4.1-119(A).

Thereafter, the plaintiffs filed a motion to amend or clarify the district court's judgment, and Virginia filed a motion for a stay of the judgment pending appeal. Before the district court had resolved these motions, the Supreme Court issued its opinion in *Granholm v. Heald*, 544 U.S. 460 (2005), which directly addressed the relationship between the dormant Commerce Clause and the Twenty-first Amendment in the context of laws similar to the ABC Act at issue here. In a Memorandum Opinion dated June 16, 2005, the district court in this case recognized the Supreme Court's intervening decision and held that because "*Granholm* resolved the central question of this case consistent with the Fourth Circuit's interpretation [in *Beskind*] of the tension between the Commerce Clause and the Twenty-First Amendment, the Court is unpersuaded that it should stay the operation of its [April 27, 2005] order." The district court denied the plaintiffs' motion to amend or clarify the judgment and Virginia's motion for a stay.

From the district court's judgment, Virginia filed this appeal, challenging the district court's ruling only insofar as it struck down the Personal Import Exception (§ 4.1-310(E)) and the ABC Stores Restriction (§ 4.1-119(A)). Virginia conceded that the Distribution, Delivery, and Shipping Privileges were unconstitutional under *Granholm*, and it initially indicated an intent to ask the Supreme Court to overrule its decision and uphold those provisions. But it has abandoned that course by reason of subsequent legislative action by the Virginia General Assembly. In its appeal, Virginia also contends that the district court erred in construing the plaintiffs' action as arising under 42 U.S.C. § 1983.

The plaintiffs filed a cross-appeal, challenging the district court's remedy of striking down the Distribution, Delivery, and Shipping Privileges for in-state producers of wine and beer. The plaintiffs contend that the appropriate remedy is to enjoin the ABC Act's prohibition against direct shipments to Virginia retailers and consumers by out-of-state wine and beer producers rather than striking down the privileges given to in-state producers and retailers.

While these appeals were pending, the Virginia General Assembly passed H.B. 601, which essentially codified the district court's judgment concerning the Distribution, Delivery, and Shipping Privileges, effective July 1, 2006. After enactment of this legislation, Virginia filed a motion to vacate the district court's judgment in part and to dismiss the plaintiffs' cross-appeal, claiming that the General Assembly's changes rendered moot the plaintiffs' challenges to the Distribution, Delivery, and Shipping Privileges and to the district court's remedy. The plaintiffs agree and state that Virginia's appeal with respect to the Distribution, Delivery, and Shipping Privileges should also be dismissed as moot.

Accordingly, we are now presented with the following issues: (1) whether Virginia's recent legislation moots Virginia's appeal concerning the Distribution, Delivery, and Shipping Privileges and the plaintiffs' cross-appeal concerning the imposed remedy; (2) whether the Personal Import Exception violates the dormant Commerce Clause interpreted in light of the Twenty-first Amendment; (3) whether the ABC Stores Restriction violates the dormant Commerce Clause interpreted in light of the Twenty-first Amendment; and (4) whether the plaintiffs' dormant Commerce Clause claims arise under 42 U.S.C. § 1983.

## II

The district court's April 27, 2005 judgment held in part that some particular provisions of the ABC Act, which afford local wineries Distribution, Delivery, and Shipping Privileges — all of § 4.1-112.1(B) of the Virginia Code and portions of §§ 4.1-207(4), 4.1-207(5), 4.1-208(1), and 4.1-208(7) — constituted an unconstitutional discrimination against out-of-state producers and sellers of wine and beer. By statutory modification, effective July 1, 2006, Virginia virtu-

ally codified the portions of the district court's decision relating to these privileges. The General Assembly's amendments track almost completely the district court's order. Although the amendment to § 4.1-112.1(B) strikes only one sentence in the statutory provision and therefore does not literally implement the court's order, the General Assembly's change substantially effectuates the order by striking only the constitutionally offending sentence.

The parties agree that these recent amendments fully implemented the district court's judgment enjoining enforcement of portions of the relevant statutes. Furthermore, the plaintiffs have all but conceded that there is no practical likelihood that Virginia will repeal these amendments and restore the enjoined provisions. Accordingly, Virginia requests that the portions of the district court's judgment that deal with the Distribution, Delivery, and Shipping Privileges be vacated as moot.

The doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction. "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotation marks omitted). Federal courts have no power to hear moot cases, and because a case can become moot at any time — even after the entry of a final judgment — the doctrine prevents a federal court of appeals from exercising its appellate jurisdiction in a moot case. *See Mellen v. Bunting*, 327 F.3d 355, 363-64 (4th Cir. 2003). A case is not moot, and the exercise of federal jurisdiction may be appropriate, however, if a party can demonstrate that the apparent absence of a live dispute is merely a temporary abeyance of a harm that is "capable of repetition, yet evading review." *See id.* at 364.

When a legislature amends or repeals a statute, a case challenging the prior law can become moot "even where re-enactment of the statute at issue is within the power of the legislature." *Am. Legion Post 7 of Durham, N.C. v. City of Durham*, 239 F.3d 601, 606 (4th Cir. 2001). Only if reenactment is not merely possible but appears probable may we find the harm to be "capable of repetition, yet evading review" and hold that the case is not moot. *Id.*; *see also Reyes v. City of Lynchburg*, 300 F.3d 449, 453 (4th Cir. 2002) (mooting an appeal

when there was "no reasonable expectation that Lynchburg [would] reenact the ordinance" (citing *Arizonans for Official English*, 520 U.S. at 67)).

In the case before us, the parties agree that, consistent with the district court's order, Virginia's recent amendments "essentially moot three of the claims Plaintiffs won below" because the amendments changed the operation of the Distribution, Delivery, and Shipping Privileges so as to effectuate the district court's judgment. Furthermore, because the plaintiffs have all but agreed that there is no practical likelihood Virginia will reenact these privileges, we agree with the parties that challenges to these privileges are moot and that we have no jurisdiction to determine whether the amendments are constitutional or whether the district court's judgment was correct. Accordingly, we dismiss Virginia's appeal insofar as it pertains to the plaintiffs' challenges to the Distribution, Delivery, and Shipping Privileges and the entirety of the plaintiffs' cross-appeal.

When we dismiss an appeal as moot, we generally also vacate the district court's judgment and order the district court to dismiss the moot portions of the case. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950); *Mellen*, 327 F.3d at 364. Although the Constitution compels dismissal of a moot case, vacatur on appeal is an equitable rule "warranted only where mootness has occurred through happenstance, rather than through voluntary action of the losing party." *Mellen*, 327 F.3d at 364; *see also U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994). Inasmuch as we have held that a State legislature's amendment of a challenged law is not "voluntary cessation" attributable to the State's executive officials defending a challenge to that law, *see Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 116 (4th Cir. 2000), we decline the plaintiffs' request that we remand to have the district court determine "whether mootness was directly and deliberately caused by Defendants."

The portions of the district court's judgment holding that the Distribution, Delivery, and Shipping Privileges are unconstitutional and the portions of its final injunction barring their enforcement are vacated, and we remand this case to the district court to dismiss the relevant claims.

### III

We now consider whether Virginia Code § 4.1-310(E)(i), the Personal Import Exception to the three-tier system, violates the dormant Commerce Clause.

Virginia Code § 4.1-310 prohibits generally the importation of alcoholic beverages into Virginia except through the three-tier structure. That provision, however, makes some exceptions for, by way of example, industrial, manufacturing, and medical purposes, *see* Virginia Code § 4.1-310(A)(i)-(iii), and for boats, railcars, and common carriers engaged in interstate commerce, *see id.* § 4.1-310(E)(iii). It also makes an exception for a small amount (one gallon or four liters) of alcoholic beverages for personal consumption — the Personal Import Exception — *see id.* § 4.1-310(E)(i).[1] Only through exceptions such as these may a person or entity import alcoholic beverages outside of the three-tier structure.

The plaintiffs contend that the Personal Import Exception discriminates against interstate commerce because it

> limits the amount of wine and beer Virginia consumers can personally transport into the State for their personal consumption, thus "causing local goods to constitute a larger share, and goods with an out-of-state source to constitute a smaller share of, the total sales in the market. . . . At the same time, Virginia imposes no restriction on how much wine or beer residents can purchase from in-state retailers, wineries, or breweries and personally transport *within the Commonwealth.* . . . This difference in treatment constitutes facial and effectual discrimination in violation of the dor-

[1] Section 4.1-310(E) of the Virginia Code provides in relevant part:

The provisions of this chapter shall not prohibit (i) any person from bringing, in his personal possession, or through United States Customs in his accompanying baggage, into the Commonwealth not for resale, alcoholic beverages in an amount not to exceed one gallon or four liters if any part of the alcoholic beverages being transported is held in metric-sized containers.

mant Commerce Clause that cannot be "saved" by the Twenty-First Amendment.

Plaintiffs advanced this argument in their brief before the Virginia legislature's recently enacted amendments rendered moot the plaintiffs' challenges to the Distribution, Delivery, and Shipping Privileges in the ABC Act. And their challenge to the Personal Import Exception depended in part on the discrimination created by Virginia's allowing consumers to buy unlimited amounts of wine directly from Virginia wineries (bypassing the three-tier structure) but only one gallon or four liters of wine from out-of-state wineries. Because Virginia wineries can no longer sell directly to consumers, this argument has also become moot. Indeed, with the amendments now in place, out-of-state wineries may be favored over in-state wineries in that consumers can purchase one gallon or four liters of wine directly from out-of-state wineries and import the wine into Virginia without going through the three-tier system, but they cannot buy wine directly from in-state wineries.[2]

Plaintiffs' challenge to the Personal Import Exception also included the argument that it discriminates against interstate commerce because consumers can purchase unlimited amounts of wine from Virginia retailers but may import only a gallon or four liters of wine from out-of-state suppliers. As they summarize, "The personal importation limitation discriminates against wine and beer *purchased* out of state." This argument has not been rendered moot, and we need to set forth the governing principles of the Commerce Clause and the Twenty-first Amendment before addressing it.

A

The Commerce Clause states that Congress "shall have the Power . . . To regulate Commerce . . . among the several states." U.S. Const.

---

[2]The ABC Act contains another exception to the three-tier structure, which is neutral to the issues in this case. Section 4.1-112.1(A) of the Virginia Code authorizes wine and beer shippers to obtain licenses to sell and ship directly to consumers for personal consumption not more than two cases of wine or beer per month. Both in-state and out-of-state wineries and breweries may obtain such licenses.

art. I, § 8, cl. 3. It is well established that this affirmative grant of authority implies a "negative" or "dormant" constraint on the power of the States to enact legislation that interferes with or burdens interstate commerce. *Dennis v. Higgins*, 498 U.S. 439, 447 (1991) ("It is also clear, however, that the Commerce Clause does more than confer power on the Federal Government; it is also a substantive restriction on permissible state regulation of interstate commerce" (internal quotation marks omitted)); *Healy v. Beer Institute, Inc.*, 491 U.S. 324, 326 n.1 (1989) ("This Court long has recognized that this affirmative grant of authority to Congress also encompasses an implicit or 'dormant' limitation on the authority of the States to enact legislation affecting interstate commerce"). A state law that discriminates against interstate commerce is the paradigm of legislation prohibited under the Commerce Clause, *see Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 579 (1986), where discrimination is defined simply as "'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Beskind*, 325 F.3d at 514 (quoting *Oregon Waste Sys. Inc. v. Dep't of Environmental Quality*, 511 U.S. 93, 99 (1994)).

In applying the dormant Commerce Clause to state alcohol regulations, we must also take into consideration the Twenty-first Amendment, which was ratified in 1933, repealing the Eighteenth Amendment and ending this country's experiment with Prohibition. Section 2 of the Amendment provides that:

> The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

The Twenty-first Amendment was designed to protect certain "core interests" of the States in "'promoting temperance, ensuring orderly market conditions, and raising revenue'" through regulation of the manufacture, distribution, and sale of alcoholic beverages. *Beskind*, 325 F.3d at 513 (quoting *North Dakota v. United States*, 495 U.S. 423, 432 (1990)). To accomplish that end, "some power to regulate interstate commerce was withdrawn from Congress so that the Commerce Clause could not be construed to prevent the enforcement of State laws regulating the importation of alcoholic beverages and the

manufacture and consumption of alcoholic beverages within State borders." *Id.* The Twenty-first Amendment thus provided the States with authority to enact legislation affecting interstate commerce, but it left unsettled whether, and to what extent, the States were subject to the nondiscrimination principle of the Commerce Clause in promoting their core interests.

In *Beskind*, which involved a challenge to North Carolina's ABC laws, which discriminated against out-of-state wine producers by allowing only in-state wineries to sell wine directly to consumers, we interpreted the Supreme Court's Twenty-first Amendment cases as establishing a two-part analytical framework for determining whether state alcohol regulations were permissible. We first considered "whether the purported State regulation violates the Commerce Clause without consideration of the Twenty-first Amendment," and, second, if it did, we then asked whether the "'principles underlying the Twenty-first Amendment [were] sufficiently implicated by the [State regulation] . . . to outweigh the Commerce Clause principles that would otherwise be offended.'" *Id.* at 513-514 (second alteration in original) (quoting *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 275 (1984))

Since our decision in *Beskind*, the Supreme Court has modified this analytical framework, preserving the first inquiry but narrowing the second, at least when economic protectionism is at issue. In *Granholm*, which invalidated direct-shipment prohibitions in Michigan and New York's laws — similar to the North Carolina laws struck down in *Beskind* and the provisions mooted here by Virginia's recent legislation — the Supreme Court affirmed that the first step in reviewing state alcohol regulations is to determine whether they discriminate against interstate commerce in violation of the Commerce Clause. 544 U.S. at 476. If the regulations do violate the Constitution in that manner, they are not automatically saved by the Twenty-first Amendment. *Id.* at 486-87. The Court rejected the view that the Twenty-first Amendment allows "States to regulate the direct shipment of wine on terms that discriminate in favor of in-state producers," *id.* at 476, and concluded that "[t]he [Twenty-first] Amendment did not give States the authority to pass *nonuniform* laws in order to discriminate against out-of-state goods, a privilege they had not enjoyed at any earlier time." *Id.* at 484-85 (emphasis added).

A discriminatory state law can, however, still be upheld by applying Commerce Clause jurisprudence — determining whether the state regulations reasonably advance legitimate state interests "that cannot be adequately served by reasonable nondiscriminatory alternatives." *Id.* at 489 (internal quotation marks omitted). Thus, the Supreme Court has made clear that the same "exacting standard" that applies to discriminatory state regulations in other contexts applies to state alcohol regulations, such that discrimination in violation of the dormant Commerce Clause can be upheld "only after finding, based on concrete record evidence, that a State's nondiscriminatory alternatives will prove unworkable." *Id.* at 493.

In *Granholm*, the Supreme Court applied those principles in concluding that the laws of Michigan and New York, which allowed local wineries, but not out-of-state wineries, to ship directly to retailers and consumers, violated the dormant Commerce Clause. The "differential treatment" between in-state and out-of-state wineries was held to constitute an indefensible "discrimination against interstate commerce." 544 U.S. at 467; *see also id.* at 476. But the court also noted repeatedly that the commonplace three-tier systems themselves did not violate the Constitution. It observed that it is "unquestionably legitimate" for a State to bar the importation of alcoholic beverages or to "funnel sales through the three-tier system." *Id.* at 489; *see also id.* ("State policies are protected under the Twenty-first Amendment when they treat liquor produced out of state the same as its domestic equivalent").

B

As we have already noted, the core of plaintiffs' challenge to the Personal Import Exception — which was based on the fact that Virginia wineries could sell unlimited amounts of wine directly to consumers, while out-of-state wineries could only sell one gallon or four liters to consumers for personal import — has been rendered moot by Virginia's recent statutory enactments.

Nonetheless, the plaintiffs continue to argue, in challenging the Personal Import Exception, that it "operates to advantage all in-state entities that sell directly to consumers . . . over out-of-state *counterparts*." (Emphasis added). Because only *retailers* in Virginia may

now sell directly to consumers, this argument must be that in-state *retailers* are favored over out-of-state *retailers*.[3] But an argument that compares the status of an in-state retailer with an out-of-state retailer — or that compares the status of any other in-state entity under the three-tier system with its out-of-state counterpart — is nothing different than an argument challenging the three-tier system itself. As already noted, this argument is foreclosed by the Twenty-first Amendment and the Supreme Court's decision in *Granholm*, which upheld the three-tier system as "unquestionably legitimate." As the ABC Act now stands, *all* out-of-state suppliers of wine are required by Virginia to sell in Virginia through the three-tier system (except for the two-case exception of § 4.1-112.1(A)), and the Personal Import Exception to that import restriction does not favor in-state wineries. Indeed, it favors the out-of-state wineries insofar as one gallon or four liters of wine may be imported into Virginia outside of the three-tier structure, whereas in-state wineries can sell only through the three-tier structure or from their own retail premises for which they must obtain a separate retail license.

The plaintiffs' only remaining argument against the Personal Import Exception is that in limiting consumers to *importing* one gallon or four liters of out-of-state wine, Virginia "discriminates against wine and beer *purchased* out of state" because "Virginia imposes no restriction on how much wine or beer residents can *purchase* from in-state retailers." This argument rests on the syllogism that (1) because *imports* are limited to one gallon or four liters, out-of-state *purchases* are limited in the same way; (2) yet, in-state purchases are not limited to one gallon or four liters; and (3) therefore, the import limitation discriminates against out-of-state purchases. The logic of the argument, however, rests on at least two errors.

*First*, the plaintiffs' comparison assumes that the regulation of the quantity of wine that may be *imported* into Virginia is a surrogate for the regulation of the quantity of wine that may be *purchased* outside of the State. But it does not follow logically (nor factually) that a

---

[3]Again, as noted in footnote 2, above, wine and beer shippers, both in-state and out-of-state, may obtain a shipper's license authorizing them to sell and ship two cases of wine per month directly to consumers for personal consumption. *See* Va. Code § 4.1-112.1(A).

restriction on *importation* effects a restriction on out-of-state *purchases*. *Second*, even if importation were a surrogate for out-of-state purchases, the argument improperly compares unlike market functions. After claiming that the *import* limitation is the equivalent of a limitation on out-of-state *purchases*, plaintiffs then compare the one gallon/four-liter out-of-state wine purchases from wineries with purchases of unlimited amounts from in-state retailers. But in comparing these different purchases — restricted out-of-state purchases from wineries with unrestricted in-state purchases from retailers — the plaintiffs overlook the fact that Virginia's ABC Act authorizes the purchase of *unlimited* quantities of alcoholic beverages out-of-state, which then may be imported into the State *through the three-tier structure*. And it is only the purchases of unlimited amounts through the three-tier structure, not through the one-gallon/four-liter exception to the structure, that may be compared with the unlimited amounts that may be purchased in state from retailers.

Under the ABC Act, Virginia regulates all *sales* of wine and beer in Virginia, but it does not regulate any *sales* outside of Virginia. Virginia regulates all *imports* of wine and beer into Virginia without regulating the prior *sales* of that wine and beer. The Personal Import Exception is an exception only to its generally applicable *import* regulation. Thus, an *import* regulation is quite distinct and different from a *sales* regulation, and comparing in-state sales with importation cannot give rise to a legitimate comparison for determining discrimination. The only fair comparison would be how the statute treats in-state *sales* and out-of-state *sales*, or in-state *wineries* and out-of-state *wineries*, or in-state *product* and out-of-state *product*.

The Personal Import Exception places no restriction on the amount of wine a person may purchase, either inside or outside Virginia. It also permits any person to *import* unlimited amounts of wine into the state through the three-tier structure. Where it does make an exception — allowing the import of a gallon or four liters of wine without going through the three-tier structure — it tends to favor, not discriminate against, interstate commerce because a consumer can buy one gallon or four liters of wine directly from a winery in another State and personally carry the wine into Virginia for consumption without comporting with the three-tier system or going through a retailer. The same consumer, however, cannot buy a similar quantity of wine

directly from an in-state winery; the consumer would have to purchase all such wine from an in-state retailer. The Personal Import Exception is, at bottom, only an exception for small amounts of wine that need not be imported through the three-tier structure, and this benefit is afforded to both Virginians and nonresidents.

Because the Twenty-first Amendment "'grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system," *Granholm*, 544 U.S. at 488 (quoting *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 110 (1980)), and because the dormant Commerce Clause only prevents a State from enacting regulation that favors in-state producers and thus discriminates *against* interstate commerce, the Personal Import Exception does not violate the Clause.

C

In addition, the Personal Import Exception is justified as an appropriate regulation under the Twenty-first Amendment that is not denied legitimacy by being "economic protectionism," as was condemned by the holdings of *Granholm* and *Bacchus*.

In *Granholm*, the Supreme Court struck down state laws in Michigan and New York that regulated the import of wine into the states and that, at the same time, allowed in-state wine producers to sell wine directly to consumers. Characterizing the laws as "straightforward attempts to discriminate in favor of local producers," 544 U.S. at 489, the Court pointed out that the Twenty-first Amendment's purpose was not "to favor local liquor industries," *id.* at 487 (quoting *Bacchus*, 468 U.S. at 276). The purpose of the Twenty-first Amendment was "to allow States to maintain an effective and uniform system for controlling liquor by regulating its transportation, importation, and use." *Id.* at 484.

Similarly in *Bacchus*, the Court struck down a Hawaiian law that exempted local wine from the State's 20% excise tax as "economic protectionism." The Court rendered its holding in response to the following question:

> The question in this case is thus whether the principles underlying the Twenty-first Amendment are sufficiently implicated by the exemption for okolehao and pineapple wine to outweigh the Commerce Clause principles that would otherwise be offended. Or as we recently asked in a slightly different way, "whether the interests implicated by a state regulation are so closely related to the powers reserved by the Twenty-first Amendment that the regulation may prevail, notwithstanding that its requirements directly conflict with express federal policies."

468 U.S. at 275-76 (quoting *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 714 (1984)). The Court concluded that economic protectionism was not justified by the Twenty-first Amendment. "Here, the State does not seek to justify its tax on the ground that it was designed to promote temperance or carry out any other purpose of the Twenty-first Amendment, but instead acknowledges that the purpose was 'to promote a local industry.'" *Id.* at 276.

In short, these cases stand for the proposition that a State's regulation of the transportation, importation, and use of alcoholic beverages in the State is protected by the Twenty-first Amendment, but economic protectionism is not and otherwise violates the dormant Commerce Clause.

While the favoritism shown by Virginia in this case to local wineries by allowing them to sell directly to consumers did amount to economic protectionism that violated the dormant Commerce Clause, the Commonwealth's interest in otherwise regulating the importation, transportation, and use of wine in Virginia is protected by the Twenty-first Amendment. It is readily apparent that the Personal Import Exception is not economic protectionism but part of Virginia's import regulation. It provides a *de minimis* exception to Virginia's import regulations, allowing consumers to import one gallon or four liters of wine for personal consumption. Under no economic construct could such a provision be considered economic protectionism of local industry. To the contrary, it actually amounts to disadvantage local wineries whose wine may only be purchased through retailers. Accordingly, we hold that, for this additional reason, the Personal Import Exception does not violate the dormant Commerce Clause.

IV

The plaintiffs also contend that Virginia's restriction authorizing ABC stores to sell only wine "produced by [Virginia] farm wineries,"[4] *see* Va. Code § 4.1-119(A), impermissibly discriminates against wines produced outside the Commonwealth, in violation of the dormant Commerce Clause.

Virginia does not deny that its ABC Stores Restriction discriminates against out-of-state wines but claims that its policy of selling only in-state wines through its own stores is protected under the "market participant" exception to the dormant Commerce Clause.

The district court rejected this defense, holding that the Commonwealth's dual role as regulator and competitor in the market for alcoholic beverages undermines its status as a constitutionally protected market participant. *See Bolick I*, 199 F. Supp. 2d at 447-49 ("The state is therefore both a regulator and a competitor which prevents application of the market participant exception in regard to the state's sale of wine because the Commerce Clause acts as an implied restraint upon state regulatory powers . . . involving interstate commerce" (internal quotation marks omitted) (alteration in original)). Virginia contends that the district court simply erred as a matter of law because "[t]here is nothing in the jurisprudence of the Supreme Court or this Court that suggests that the Market Participation Exception does not

---

[4]The ABC Act defines "farm winery" as

> an establishment (i) located on a farm in the Commonwealth with a producing vineyard, orchard, or similar growing area and with facilities for fermenting and bottling wine on the premises where the owner or lessee manufactures wine that contains not more than 18 percent alcohol by volume or (ii) located in the Commonwealth with a producing vineyard, orchard, or similar growing area or agreements for purchasing grapes or other fruits from agricultural growers within the Commonwealth, and with facilities for fermenting and bottling wine on the premises where the owner or lessee manufactures wine that contains not more than 18 percent alcohol by volume.

Va. Code § 4.1-100.

apply in situations where the government is acting as a regulator of the products that it is selling or purchases."

Before applying the dormant Commerce Clause to State activities that burden or discriminate against interstate commerce, a court must determine whether the State "is acting as a market *participant*, rather than as a market *regulator*." *South-Central Timber Development, Inc. v. Wunnicke*, 467 U.S. 82, 93 (1984) (emphasis added). If the State is a valid market participant, "the dormant Commerce Clause places no limitation on its activities." *Id.* This market participant exception "makes sense because the evil addressed by [the dormant Commerce Clause] — the prospect that States will use custom duties, exclusionary trade regulations, and other exercises of governmental power (as opposed to the expenditure of state resources) to favor their own citizens — is entirely absent where the States are buying and selling in the market." *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 685 (1999) (citation omitted).

The line of cases applying the market participant exception establishes this principle both clearly and consistently. In *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794 (1976), the Court held that the State of Maryland could pay local sellers of automobile scrap above-market rates for the scrap even though the State's activity potentially reduced the export of automobile scrap from Maryland. The Court held that "[n]othing in the purposes animating the Commerce Clause prohibits a State . . . from participating in the market and exercising the right to favor its own citizens over others." *Id.* at 810. In *Reeves, Inc. v. Stake*, 447 U.S. 429 (1980), the Court approved of South Dakota's decision to limit the sale of cement from a state-owned facility to South Dakotans. And in *White v. Massachusetts Council of Construction Employers, Inc.*, 460 U.S. 204 (1983), the Court held that the Mayor of Boston was participating in the construction market when he ordered that buildings funded from the public fisc could only be constructed by work forces, at least 50 percent of which were city residents. Although the Court recognized the existence of some limits "on a state or local government's ability to impose restrictions that reach beyond the immediate parties with which the government transacts business," it did not articulate those limits because everyone in the construction labor market who was affected by the Mayor's order

was, "in a substantial if informal sense, 'working for the city.'" *Id.* at 211 n.7.

The Court did, however, define some limits to the market participation exception in *South-Central Timber*, in which a plurality held that the State of Alaska could not, as a condition of sale, require the purchasers of its unprocessed timber to process it in-state. Even though the Court reaffirmed "the principle that the Commerce Clause places no limitations on a State's refusal to deal with particular parties when it is participating in the interstate market in goods," 467 U.S. at 94, it limited the scope of the principle *to the market* in which the State was participating. The Court recognized that the State was a participant in the timber market but was not a participant in the downstream market of timber-processing. And, unlike the construction workers in *White*, the timber purchasers could not be deemed State employees. The Court concluded that because the State did not participate as an economic competitor in the downstream timber-processing market in which its restrictions nevertheless had a significant effect, the State's conditions amounted to impermissible regulation.

These cases stand for the principle that the market participation exception applies to protect discriminatory conduct when the State acts like a participant in the relevant market. *Cf. South-Central Timber*, 467 U.S. at 96 (noting that, in the commercial context, "the seller usually has no say over, and no interest in, how the product is to be used after sale"). States, therefore, have the freedom to make discriminatory decisions while acting in a market, but they cannot impose any terms or conditions "that have a substantial regulatory effect outside of that particular market" to achieve by contract what the dormant Commerce Clause would forbid them to achieve by statute. *Id.* at 97.

As evidenced by the ABC Stores Exception, § 4.1-119(A) of the ABC Act, Virginia has elected to sell beer and wine, as well as some related products — along with liquor — from state-owned and operated stores. And just as the Commonwealth has elected not to sell every brand of liquor manufactured, it has elected not to sell out-of-state wines, choosing instead to sell only Virginia-produced wines. In doing so, it competes as a participant in the Virginia wine market with the thousands — more than 10,000, according to Virginia — of other

private wine retailers who sell both Virginia wines and out-of-state wines in Virginia. Virginia's choice of selling only Virginia wine is no more inappropriate than would be its choice to sell only Hershey's brand chocolate bars at a State commissary. Like all other in-state wine retailers, the ABC stores can choose which wines they purchase and stock, and Virginia's commitment to purchase only in-state wines is a choice that any wine retailer would be free to make for itself. This choice is indistinguishable from Maryland's choice in *Alexandria Scrap*. Just as Maryland favored in-state sellers when it purchased automobile scrap at high prices, Virginia favors in-state wines in its stores.

The plaintiffs contend that the ABC Stores Restriction falls outside of the Supreme Court cases delineating the market participation exception. They rely on two arguments to support that conclusion: (1) that the exception does not apply when a State acts as a "pervasive market regulator" that establishes a "channel of commerce that it itself controls to disadvantage out-of-state interests even when other private, competing channels of commerce exist," and (2) that the exception does not apply when a State "is simply trying to leverage its *market* power in one domain to achieve otherwise prohibited *regulatory* power in another." The plaintiffs contend that because Virginia maintains a monopoly on the sale of hard liquor, being the only seller of hard liquor in Virginia, it is attempting to use that monopoly to gain a competitive advantage for wines produced within the Commonwealth. We address these arguments *seriatim*.

A

The plaintiffs rely on *South-Central Timber* to argue that States may not simultaneously regulate and participate in a market: "The fact that the Virginia ABC Board pervasively regulates the market it participates in forecloses application of the market participant exception here. Its role as regulator constitutionally overshadows its role as participant." The plaintiffs, however, misread *South-Central Timber*.

In *South-Central Timber*, Alaska, in selling timber, required that the purchaser of the timber process the timber in Alaska before shipping it outside of the State. The Supreme Court did not deny Alaska the right to sell the timber as a market participant to whomever it

chose and at whatever price. Rather, as the Court noted, Alaska was attempting to impose "conditions downstream in the timber-processing market." *Id.* at 95. The Court explained, "In the commercial context, the seller usually has no say over, and no interest in, how the product is to be used after sale." *Id.* at 96. Summarizing its rejection of Alaska's condition as impermissible for a market participant, the Court stated, "The limit of the market-participant doctrine must be that it allows a State to impose burdens on commerce *within the market in which it is a participant*, but allows it to go no further." *Id.* at 97 (emphasis added). Contrary to the plaintiffs' argument, the holding of *South-Central Timber* leaves the market participant free to burden or discriminate in the market in which it participates, even if it also regulates the market.

State regulation of markets across the country is pervasive; most States, if not all, have general market regulations, such as unfair trade practices laws. If the mere fact of regulation precluded applying the market participant exception, no State would ever qualify. Plaintiffs thus must argue that the State cannot participate in a market when it pervasively regulates that specific market.

But the Supreme Court has approved applying the market participant exception even when a State's regulations are trained on the specific market in which it participates. This was the situation in *Alexandria Scrap*, in which the State of Maryland not only participated in the automobile scrap market, but, through the same legislation authorizing above-market purchases from in-state scrap sellers, also required those sellers to "obtain a license and pay a recurring fine" if they did not sell their scrap to willing purchasers, including Maryland. *See Alexandria Scrap*, 426 U.S. at 797; *see also Chance Mgmt., Inc. v. South Dakota*, 97 F.3d 1107, 1113 (8th Cir. 1996) (finding that, despite South Dakota's heavy regulation of the state lottery and all other forms of gambling, the State's pervasive involvement in running the lottery was not "regulation of 'the market,'" but rather was no more than "administering its own business").

The fact that Virginia regulates the alcohol market is not sufficient to preclude its status as a market participant. To contravene the dormant Commerce Clause, a State must do more than regulate markets in which its participation happens to favor local interests. The State

acts unconstitutionally when its participation in one market results in regulation of another market in which it does *not* participate. That cannot be said of Virginia's decision to sell only Virginia wines from its own retail stores as its participation in the wine market has no regulatory effects on other markets.

B

The plaintiffs also contend that the ABC Stores Restriction falls outside the market participant exception because the State sells in-state wines in the same stores as hard liquor, thereby "leverag[ing] its market power in one domain" — the hard liquor market in which it has a monopoly — "to achieve otherwise prohibited regulatory power in another" — the wine market. To support this "leveraging" claim, the plaintiffs argue that, if Virginia licensed private retailers to sell liquor rather than state-run ABC stores, it could not pass a law allowing the private stores to sell only Virginia wines. That would discriminate against out-of-state wines in violation of the dormant Commerce Clause.

We find this "leveraging" argument, and the hypothetical reasoning advanced to support it, both misleading and irrelevant. The hypothetical is misleading because it involves state *regulation* of *private* businesses competing in the wine market and not state *participation* in that market, fatally assuming away the prerequisites of the market participant exception; and it is irrelevant because Virginia does not prohibit privately-owned stores from selling out-of-state wines. Indeed, as the plaintiffs concede, there are thousands of retail outlets at which consumers may purchase both out-of-state and Virginia-produced wines at fully competitive prices. Furthermore, there is no evidence in the record to suggest that Virginia's sale of Virginia farm wines at ABC stores interferes with or burdens the free and competitive market in both in-state and out-of-state wines. There is no evidence that consumers face any impediment to purchasing wines of their preference at fair market prices. This lack of evidence is particularly relevant given the district court's finding that "the consumer who prefers to purchase an out-of-state or foreign vintage, as well as distilled spirits which are only available at state stores, is deterred from buying his favorite wine after he buys his liquor because of the inconvenience involved in going to a separate source."

While there is no evidence in the record to support any claim of consumer deterrence, the Commonwealth nonetheless cannot be barred from making business choices that favor local interests on the ground that some consumers might be inconvenienced. Any choice to sell one brand or type of product rather than another could have that result. If the Commonwealth maintained its monopoly on hard liquor and authorized its ABC store managers to stock *both* in-state and out-of-state wines, the ABC store manager's choice to purchase and sell only a limited array of brands and types of wine would still inconvenience consumers who wanted to purchase what the manager failed to select. On the district court's theory and according to the plaintiffs, so long as the Commonwealth maintains its lawful monopoly in hard liquor, it could not sell *any* wines because to do so would inconvenience consumers who prefer some alternative.

The cases establishing the market participant exception do not compel that conclusion and, in fact, militate against it. They stand for the proposition that a State may engage as a competitor in a free and open market, making business choices to buy and sell goods, even if those choices favor local products. And that is all that Virginia has done here; it sells in-state wines from its ABC stores in a fully competitive wine market. *See Reeves*, 447 U.S. at 437 ("There is no indication of a constitutional plan to limit the ability of States themselves to operate freely in the free market"). And its doing so does not regulate the sale of wines in Virginia by other stores.

The dissent's argument — which has not been advanced by the plaintiffs — that because Virginia has a monopoly in the sales of hard liquor, it somehow cannot be a participant in the market for the sale of wine because the "relevant market" is a single market for the sale of both "wine and liquor," is flawed for several reasons. First, it is a non-sequitur to conclude that Virginia does not compete in the sale of wine because it has a monopoly in the sale of hard liquor. Second, the dissent's reliance on Virginia's supposed market control of a single market consisting of wine and liquor does not take into account the fact that consumers can purchase wine not only from ABC Stores but also from over 10,000 private retailers throughout the Commonwealth. Third, if the dissent suggests that Virginia has a monopoly for stores where one can buy both wine and liquor, that says nothing about a relevant market. Simply because a retailer sells two different

products from the same location when no other retailer sells the same two products does not make the retailer a monopolist in a joint "market," and this is true even if no other retailer sells one of the products. These are matters of convenience, not monopoly power. Finally, there is no evidence in the record to support the dissent's single market theory in an economic sense. The dissent cannot legitimately argue that, based on an intuited assumption, consumers demanding a bottle of whiskey or vodka will fulfill that demand by buying a bottle of wine or that consumers demanding a bottle of wine will fulfill that demand by buying a bottle of whiskey or vodka. Common sense compels a conclusion that there simply is no cross-elasticity of demand to justify concluding that there is a single market consisting of wine and liquor.

As the record stands, a fully competitive market exists in Virginia for the sale of wine, and Virginia's ABC Stores are but one class of retailer that participates in that market.

V

Finally, we address Virginia's contention that the plaintiffs cannot bring their dormant Commerce Clause challenges under 42 U.S.C. § 1983, and that, consequently, the plaintiffs do not qualify to make a claim for attorneys fees under 42 U.S.C. § 1998, if they satisfy that provision. Specifically, Virginia claims that, in *Gonzaga University v. Doe*, 536 U.S. 273 (2002), the Supreme Court narrowed the scope of § 1983 actions to only those claims based on an "unambiguously conferred right." Virginia contends that the Commerce Clause does not confer individual rights and so cannot form the basis of a § 1983 action.

This claim, however, overlooks *Dennis v. Higgins*, 498 U.S. 439 (1991). In *Dennis*, the Supreme Court resolved a conflict among the circuits on precisely this question, holding that, in addition to allocating power between the federal and state governments, the Commerce Clause confers "'a right which every citizen of the United States is entitled to exercise under the Constitution and laws of the United States.'" *Id.* at 448 (quoting *Crutcher v. Kentucky*, 141 U.S. 47, 57 (1891)); *see also Medigen of Kentucky, Inc. v. Pub. Serv. Comm'n*, 985 F.2d 164, 167 n.3 (4th Cir. 1993) (applying *Dennis* and holding that "Commerce Clause violations [are] actionable under § 1983");

*Yamaha Motor Corp. v. Jim's Motorcycle, Inc.*, 381 F. Supp. 2d 499, 502 (E.D. Va. 2005) (Payne, J.) (noting that "*Gonzaga* does not overrule *Higgins* and that the Fourth Circuit has applied *Higgins* in reaching the same result").

Given that *Gonzaga* did not expressly overrule *Dennis*, *Dennis* remains controlling authority. We have previously acknowledged the Supreme Court's instruction that "'[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.'" *Nat'l Home Equity Mortgage Ass'n v. Face*, 283 F.3d 220, 224 (4th Cir. 2002) (alteration in original) (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (internal quotation marks omitted)). Not only has Virginia failed to show that *Gonzaga sub silentio* overruled *Dennis*, but it has also provided no authority authorizing us to ignore directly controlling Supreme Court precedent that has not been overruled.

## VI

In sum, we affirm the district court's ruling that plaintiffs may bring their Commerce Clause challenges under 42 U.S.C. § 1983; we reverse the district court's judgment holding unconstitutional the Personal Import Exception and the ABC Stores Restriction; and we dismiss as moot the appeal and cross-appeal insofar as these appeals relate to provisions of the ABC laws amended by the Virginia legislature effective July 1, 2006, vacate the relevant judgment of the district court, and remand with instructions to dismiss plaintiffs' challenges to these provisions.

*AFFIRMED IN PART; REVERSED IN PART; AND DISMISSED IN PART, VACATED AND REMANDED*

TRAXLER, Circuit Judge, concurring in part and concurring in the judgment:

I concur in the judgment, and I concur in all but part III(B) of the excellent opinion written by Judge Niemeyer.

GOODWIN, District Judge, concurring and dissenting:

I concur in Parts I, II, and V of the majority opinion. I respectfully dissent from Parts III and IV. I would affirm the district court's conclusion that the Personal Import Exception[1] and ABC Stores Restriction[2] are unconstitutional.

I.

In *Granholm v. Heald*, 544 U.S. 460 (2005), the Supreme Court adopted a framework for examining whether state liquor laws violate the dormant Commerce Clause. The Court responded to lower court decisions finding the Twenty-First Amendment could, in some situations, save state liquor laws that discriminated against interstate commerce. Our opinion in *Beskind v. Easley*, 325 F.3d 506 (4th Cir. 2003), was such a decision. In *Beskind*, we held that when considering a state liquor law, we first examine whether the law violates the dormant Commerce Clause. *Beskind*, 325 F.3d at 513. If so, we explained we then look to the "principles underlying the Twenty-first Amendment" to determine if they are sufficiently implicated by the law "to outweigh the Commerce Clause principles that would otherwise be offended." *Beskind*, 325 F.3d at 513-14 (quoting *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 275 (1984)).

I believe the majority opinion misconstrues the effect that the Supreme Court's decision in *Granholm* had on the analytical framework we constructed in *Beskind*. The majority reads *Granholm* as only modifying that framework. The majority explains, "the Supreme Court has modified th[e] [*Beskind*] framework, *preserving the first inquiry but narrowing the second*." *Op*. at 15 (emphasis added). In my view, *Granholm* does not narrow, but rather completely eliminates consideration of *Beskind*'s "second inquiry."

---

[1]The Personal Import Exception allows individual consumers to import one gallon (or four liters) of wine and beer into Virginia without having to pass through the three-tier distribution system. Va. Code § 4.1-310(E).

[2]The ABC Stores Restriction prevents ABC stores from marketing and selling any wine not produced by Virginia "farm" wineries. *Id*. § 4.1-119(A).

Quite simply, I read *Granholm* as requiring us to apply the same dormant Commerce Clause analysis to discriminatory liquor laws that we apply to other discriminatory laws. *Granholm*, 544 U.S. at 476. We do not consider the principles of the Twenty-first Amendment. *See id.* at 487-88 ("[T]he Twenty-first Amendment does not supersede other provisions of the Constitution.").

It is clear, however, that because the majority believes the Personal Import Exception does not discriminate against interstate commerce, the majority's constitutional conclusion would be the same even under my conception of the proper articulation of the change effected by *Granholm*.

## II.

The majority concludes that to find the Personal Import Exception unconstitutional, we also would have to find Virginia's three-tier distribution system unconstitutional. I disagree. The discriminatory effect of the Personal Import Exception occurs *after* the beverages have passed through Virginia's three-tier system. It is at this stage, when the alcoholic beverages are on the shelves ready for market, that interstate commerce is impermissibly impeded. *See H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 535 (1949) ("[T]he 'negative' or 'dormant' aspect of the Commerce Clause prohibits States from 'advancing their own commercial interests by curtailing the movement of articles of commerce, either into or out of the State.'"). The law tilts the market in favor of in-state retailers by preventing Virginians from having meaningful access to the markets of other States. *See Granholm*, 544 U.S. at 473 (finding state liquor laws unconstitutional because they "deprive *citizens* of their right to have access to the markets of other States on equal terms") (emphasis added).

I concede that a restriction on imports does not necessarily target out-of-state purchases. Obviously, a Virginian may buy the same amount of beer or wine in an out-of-state store as may a purchaser from any other State. In theory then, Virginia consumers are not denied access to the markets of other States because they are free to purchase the same amounts as other consumers. In reality, however, because Virginians may not carry more than a gallon of what they buy into Virginia, they are denied access to other States' markets on equal

terms with other consumers. Having an opportunity to purchase is not the equivalent of having meaningful market access. Such access requires not only that a consumer be able to purchase a product, but also that the consumer be able to use it. By preventing importation into Virginia, the Personal Import Exception impedes interstate commerce.

Consider this example: Mr. Smith lives in Bristol, Virginia, a town on the Virginia/Tennessee border. He wants to purchase a 12-pack of beer. The closest place he can buy beer is just across West State Street in Tennessee. The closest store in Virginia is nearly twice as far from Mr. Smith's house. The Personal Import Exception deprives Mr. Smith of meaningful access to the conveniently located Tennessee retailer merely because it is located across the state line. To buy more than one gallon of beer (128 ounces), Mr. Smith must go to a Virginia store. Mr. Smith presumably could go to Tennessee and buy a 12-pack (approximately 144 ounces), but would have to either discard or drink two of the beers before crossing the street back into Virginia. The import restriction prevents Virginians from meaningfully participating in the markets of other States. As a result, the restriction impermissibly impedes interstate commerce.

The Commonwealth argued that because *Granholm* noted that a State could completely bar the importation of alcohol, it follows that a law limiting alcohol importation is clearly permissible. *Granholm*, however, plainly indicates that a complete bar could be enacted only in "[a] State which chooses to ban the sale and consumption of alcohol *altogether*." *Granholm*, 544 U.S. at 488-89 (emphasis added). Virginia has not prohibited either the sale or consumption of alcohol *altogether*.

Virginia's limitation on the quantity of alcoholic beverages a person may bring into the Commonwealth favors in-state economic interests over out-of-state economic interests. As *Granholm* explains, "Time and again [the Supreme Court] has held that, in all but the narrowest circumstances, state laws violate the *Commerce Clause* if they mandate 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Id.* at 472 (quoting *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994)). Statutes with this effect are "generally struck down

. . . without further inquiry." *Id.* at 487 (quoting *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986)). "State laws that discriminate against interstate commerce face 'a virtually *per se* rule of invalidity.'" *Id.* at 476 (quoting *Philadelphia*, 437 U.S. at 624)).

The Personal Import Exception can be saved only if the regulation "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 278 (1988). Virginia argues the law advances two purposes: 1) it facilitates tax collection and 2) it controls the importation of bootleg liquor. Both of these interests may be adequately served by reasonable nondiscriminatory alternatives. J.A. at 551 (As the Magistrate Judge below found, "the prohibition cannot be viewed as serving any legitimate core concern of the Twenty-first Amendment unless, of course, one concludes that transportation of unlimited quantities of alcoholic beverages acquired within Virginia necessarily has less potential for intemperance or other abuse than that acquired 'over the state line'"); *see also Granholm*, 544 U.S. at 489-92 (rejecting collecting tax revenue and protecting minors as legitimate local purposes for Michigan and New York laws).

Accordingly, I believe the Personal Import Exception is unconstitutional because it violates the dormant Commerce Clause.

III.

The ABC Stores Restriction is also unconstitutional. Virginia concedes this law discriminates against out-of-state wines, but claims the "market participant" exception justifies the discrimination.

The majority finds the market participant exception applicable because Virginia is a competitor in the market for wine in Virginia. The majority, however, fails to accurately define the relevant market. Because ABC Stores are the only stores where consumers may purchase liquor in Virginia, these stores are the only places where consumers may purchase *wine and liquor* in the same place. A consumer's demand for purchasing both a bottle of liquor *and* a bottle of wine *at the same time* may be satisfied *only* in ABC Stores. The

relevant market is not the market for wine, but the market for *wine and liquor*.

Virginia has granted itself a monopoly in the market for the *joint sale* of wine and liquor through its ABC Stores, and uses that monopoly to impermissibly discriminate against out-of-state wines. As a result, the market participant exception cannot justify the ABC Stores Restriction.

## IV.

Accordingly, I respectfully dissent from Parts III and IV of the majority opinion, and would find the Personal Import Exception and the ABC Stores Restriction unconstitutional.